**Patrick LOPRESTI, as Trustee of the Pension Fund of Local One, Amalgamated Lithographers of America, as Trustee of the Sickness & Accident Fund of Local One, Amalgamated Lithographers of America, and as President of Local One, Amalgamated Lithographers of America, Plaintiff-Appellant,**

**Richard Boesch; Marcos Bonilla; William Capone; Louis Chiacchiaro; John Churchill; Henry Christadoro; Joseph Currao; Joseph D'Agostino; Johnny Gonzalez; Anthony Grotto; Dennis Larkin; John Lazarus; Robert Lepore; Martin Mizrachi; Alfred Natale; Milton Nazario; Gerald Pizzo; Joseph Ressa; Vincent Rice; Daniel Romano; Leonard Sannicandro; Thomas Scaglione; Daniel Scavetta; Anthony Scott; James Seaman; Anthony Wetzel; Plaintiffs,**

v.

**John TERWILLIGER; Donald L. Terwilliger, III, Defendants–Appellees.**

No. 672, Docket 96–9693.

United States Court of Appeals, Second Circuit.

Argued Aug. 7, 1997.

Decided Sept. 12, 1997.

Ira S. Cure, Kennedy, Schwartz & Cure, New York City, for Plaintiff–Appellant.

Gail Ann Perry, Trial Attorney, U.S. Department of Labor, for Secretary of Labor as Amicus Curiae in Support of Plaintiff–Appellant, Washington, D.C.

David M. Richman, New York City, for Defendants–Appellees.

Before: CALABRESI and PARKER, Circuit Judges, and McCURN, District Judge.*

McCURN, District Judge:

Pursuant to a collective bargaining agreement between a commercial printing firm,

* Honorable Neal P. McCurn, of the United States District Court for the Northern District of New York, sitting by designation.

the D.L. Terwilliger Co., Inc. ("the Company"), and Local One, Amalgamated Lithographers of America ("the Union"), the Company had an obligation to deduct from its employees' paychecks contributions which, in turn, it was to forward to the Union's pension fund and Sickness & Accident Fund (collectively, "the Funds"). Under that collective bargaining agreement, the Company also was obligated to deduct from its employees' paychecks Union dues and assessments (collectively, "the dues"), which it was to forward to the Union. From May through September, 1995, the Company fell on hard times financially,[1] and although monies for the Funds and the Union were deducted from employee wages, neither the Funds nor the Union ever received those earmarked monies. Instead, the deducted employee contributions and Union dues were deposited in the Company's general account and used to pay Company creditors who "screamed the loudest" and who were the most "threatening." A150.[2]

Joined by twenty-six former Company employees, the plaintiff-appellant, Patrick LoPresti ("the Trustee"),[3] commenced the present action against the defendant-appellees, John Terwilliger and Donald L. Terwilliger, III,[4] the Company's sole shareholders and officers, alleging multiple breaches of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.* Besides asserting five separate ERISA-based causes of action, the Trustee asserted a pendent state law claim for conversion and a cause of action under section 630 of the New York State Business Corporation Law ("BCL").[5]

Following a non-jury trial, the United States District Court for the Southern District of New York (Chin, *J.*) found that the Terwilligers were not fiduciaries within the

meaning of section 3(21)(A) of ERISA, codified at 29 U.S.C. § 1002(21)(A), and thus could not be held personally liable under ERISA for breach of fiduciary duty. Primarily because the record did not show that the Terwilligers used the earmarked monies for themselves, the district court further held that the Trustee failed to establish a cause of action for conversion. Thus, finding no merit to any of the Trustee's claims, the district court entered judgment in favor of the Terwilligers, dismissing the complaint with prejudice. This appeal followed.

For the reasons that follow, we affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

## BACKGROUND

During the relevant time frame, Donald Terwilliger was the Company president and fifty-one percent (51%) shareholder, while his brother John held the remaining forty-nine percent (49%) of the shares. On behalf of the Company, Donald signed a collective bargaining agreement with the Union, and although he was not aware of the details of that agreement, he knew that Fund contributions and Union dues were deducted from the employees' paychecks. He was also aware that after the Company made those deductions, periodically, it turned them over to the Union and the Funds. Similarly, John was "aware generally" of deductions from employee wages; that those monies were placed in the Company's general accounts; and that "the union was to be paid when the 'bills' were due." A168–A169.

The Terwilligers both signed multiple checks which were drawn on a Company account, including checks which were forwarded to the Union. As the Terwilligers admitted, those deductions were not main-

---

1. Indeed, in September, 1995, the Company filed a Chapter 11 bankruptcy petition.

2. All page references prefaced by "A" refer to the appendix on appeal.

3. Mr. LoPresti is suing in his capacity as Trustee of the two Funds, as well as in his capacity as Union president.

4. To avoid confusion, when referring to the Terwilligers individually, the Court will refer to them simply as Donald and John.

5. Evidently in light of *Romney v. Lin*, 94 F.3d 74, 79–80 (2d Cir.1996), *reh'g denied*, 105 F.3d 806 (2d Cir.), *petition for cert. filed*, 65 USLW 3728 (April 16, 1997), wherein this Court held that ERISA preempts a cause of action under BCL § 630, the Trustee withdrew his seventh cause of action brought pursuant to that statute. A158.

tained in a separate account, however. In terms of who had responsibility for deciding which creditors were paid and when, the district court expressly found that although Donald "ha[d] a role in determining which bills to pay, . . . he usually followed the advice of [the Company's vice president of finance]." A168. On the other hand, the district court found that John was "primarily a production person" in that "[h]e calculated the hours worked by employees and gave that information to the accounting department." *Id.* Significantly, unlike Donald, the district court expressly found that John "had *no responsibility* for determining which of the company's creditors would be paid or in what order." *Id.* (emphasis added). In light of the foregoing, the district court held that neither of the Terwilligers were fiduciaries as ERISA defines that term because "[t]hey did not exercise any control in the sense contemplated by [that statute] as fiduciaries." A171.

On this appeal, the Trustee takes the position that because the Terwilligers exercised authority over plan assets they were *"de facto"* fiduciaries, and thus the district court erred in finding them not personally liable as such under ERISA. Endorsing the Trustee's position on this appeal, the Secretary of Labor, as *amicus curiae,* asserts that the district court erred in not finding that the Terwilligers were fiduciaries under ERISA because that statute does not permit, as the district court implied, that because of the Company's dire financial situation, the Terwilligers were free to use for Company operating expenses employee fund contributions. In other words, once the Terwilligers failed to segregate the employees' contributions and remit the same to the Funds, they became fiduciaries within the meaning of ERISA, and hence personally liable for any losses resulting from a breach of fiduciary duty on their part.

In response, the Terwilligers argue that as corporate officers and owners of a closely held-corporation which was in dire financial straits, they were simply exercising business judgment in deciding which Company creditors to pay and in what order. Therefore, the district court correctly held that the Terwilligers were not ERISA fiduciaries, and thus not personally liable thereunder for the Company's failure to remit employee contributions to the Funds.

In addition to challenging the district court's dismissal of the ERISA claims, because the Terwilligers assumed control over employee fund contributions and Union dues which should have been segregated, and because they used those monies for their own purposes—to keep Company creditors at bay—the Trustee maintains that the district court also erred in not finding the Terwilligers liable for conversion. Furthermore, the Trustee argues that the Terwilligers should be liable for conversion because, despite what the district court implied, an individual still can be held liable for conversion even if the money was not used for that individual's own purposes. Agreeing with the district court's observation that if there was any conversion claim here it would be against the Company, the Terwilligers counter that the district court rightly found that they should not be held personally liable for conversion for the manner in which they managed the Company's assets during troubled financial times.

## DISCUSSION

### I. Standard of Review

Before addressing the merits of these arguments, as the Trustee's reply brief makes clear, this Court must first consider the appropriate standard of review. Assuming the applicability of Fed.R.Civ.P. 52(a),[6] the Terwilligers assert, among other things, that Judge Chin's holding that they are not fiduciaries under ERISA should be affirmed because his factual findings in that regard were not clearly erroneous. Challenging the Terwilligers' assumption as to the appropriate standard of review, the Trustee contends that whether the Terwilligers are deemed to be ERISA fiduciaries is a question of law,

---

**6.** That Rule provides, in relevant part, that in all actions tried without a jury, as was the present case, "[f]indings of fact, . . . , shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge . . . the credibility of the witnesses." Fed.R.Civ.P. 52(a).

subject to *de novo* review. At most, the Trustee asserts that whether the Terwilligers are fiduciaries under ERISA is a mixed question of law and fact. In any event, the Trustee further contends that even if this Court employs the clearly erroneous standard of review, the district court's finding that the Terwilligers were not ERISA fiduciaries cannot be sustained under that less stringent standard of review.

A district court's findings of fact following a bench trial will be set aside on appeal only if those findings are clearly erroneous. *FDIC v. Providence College*, 115 F.3d 136, 140 (2d Cir.1997) (citations omitted). Under the Supreme Court's oft-quoted formulation, "factual findings by the district court will not be upset unless [the Court of Appeals is] 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). "The Supreme Court instructs that '[i]f the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.'" *Donato v. Plainview–Old Bethpage Cent. School Dist.*, 96 F.3d 623, 634 (2d Cir.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 1083, 137 L.Ed.2d 218 (1997) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573–74, 105 S.Ct. 1504, 1511–12, 84 L.Ed.2d 518 (1985)). " 'However, the district court's application of th[e] facts to draw conclusions of law, including a finding of liability, is subject to de novo review.'" *Providence College*, 115 F.3d at 140 (quoting *Travellers Int'l A.G. v. Trans World Airlines*, 41 F.3d 1570, 1575 (2d Cir.1994)). "So called mixed questions of law and fact are also reviewed de novo." *Id.*

This Court has not yet been squarely faced with the narrow issue of whether ERISA fiduciary status is strictly a factual issue subject to a clearly erroneous standard of review, a legal issue subject to *de novo* review, or a mixed question of law and fact, also subject to *de novo* review. Other Circuit Courts which have specifically addressed that issue have held, however, that "[t]he existence of a fiduciary relationship under ERISA, on the merits, is a mixed question of law and fact." *See, e.g., Kramer v. Smith Barney*, 80 F.3d 1080, 1083 n. 2 (5th Cir. 1996) (citing *Reich v. Lancaster*, 55 F.3d 1034, 1044–45 (5th Cir.1995)) (other citation omitted). By the same token, where the facts are not in question, whether a party is an ERISA fiduciary "is purely a question of law." *Kayes v. Pacific Lumber Co.*, 51 F.3d 1449, 1458 (9th Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 301, 133 L.Ed.2d 206 (1995); *see also Libbey–Owens–Ford Co. v. Blue Cross & Blue Shield Mutual*, 982 F.2d 1031, 1034 (6th Cir.1993) (citation omitted) (because whether an administrator of a self-insured benefits plan is an ERISA fiduciary is a conclusion of law, it is subject to *de novo* review).

Here, the Trustee suggests that the district court made clearly erroneous factual findings in ascertaining the Terwilligers' fiduciary status under ERISA, but nowhere does he specifically identify any such findings. A careful review of the Trustee's briefs reveals that actually he is not challenging the district court's factual findings, but instead he is attacking the legal conclusion which the court drew from those facts—that is that the Terwilligers are not fiduciaries within the meaning of section 1002(21)(A) of ERISA. Because the Trustee disputes the legal conclusion reached by the district court here, and not the factual findings which formed the basis for that conclusion, *de novo* review is appropriate. Likewise, even though the parties did not consider the standard of review which governs the conversion claim, the Court finds that it too is subject to *de novo* review, because, again, the Trustee does not dispute the factual predicate for that claim. Instead, he disagrees with the district court's legal conclusion that the Terwilligers cannot be held liable under that theory.

## II. ERISA Fiduciary

It is undisputed that the employees' contributions to the Funds, but *not* the Union dues and assessments, were plan assets governed by ERISA. *See* 29 C.F.R. § 2510.3–102(a).

Thus, the critical issue here is whether the district court erred in finding that the Terwilligers were not fiduciaries under ERISA when they used plan assets to pay Company creditors, rather than forwarding those assets to the Funds.

■■■ As this Court has recognized, Congress intended ERISA's definition of fiduciary "to be broadly construed." *Blatt v. Marshall & Lassman*, 812 F.2d 810, 812 (2d Cir.1987). "Unlike the common law definition under which fiduciary status is determined by virtue of the position a person holds, ERISA's definition is functional." *Mason Tenders Dist. Council Pension Fund v. Messera*, 958 F.Supp. 869, 881 (S.D.N.Y. 1997) (citing, *inter alia, Mertens v. Hewitt Assocs.*, 508 U.S. 248, 262, 113 S.Ct. 2063, 2071–72, 124 L.Ed.2d 161 (1993)). Section 1002(21)(A) of ERISA defines a fiduciary in several ways. In relevant part, that statute provides that a "person is a fiduciary with respect to a plan," and therefore subject to ERISA fiduciary duties, "to the extent" that he or she "exercises any authority or control respecting management *or* disposition of [plan] assets," or, "has any discretionary authority or discretionary responsibility in the administration of such plan." 29 U.S.C. § 1002(21)(A)(i) and (iii).

■■ In the present case, primarily on the basis that the Terwilligers did not administer the subject Funds, the district court found that they did not meet the statutory definition of a fiduciary. By focusing on whether the Terwilligers were administrators of the Funds, however, the district court overlooked the fact that an individual also may be an ERISA fiduciary by, as just stated, "exercis[ing] *any* authority *or* control respecting management *or* disposition of [plan] assets." *Id.* (emphasis added). Apparently, Donald and his brother John were the only signatories on the Company's account, and Donald signed checks on that account, including checks payable to the Funds. Of equal if not more import, though, is that, as the district court found, Donald had "a role in determining which bills to pay," in that he decided which creditors were to be paid out of the Company's general account (which, during the relevant time frame, included employee

Fund contributions), and when those creditors were to be paid. A168. Significantly, Donald is not challenging any of these factual findings on this appeal, and certainly the foregoing factual findings are plausible when the record is viewed as a whole. Consequently, this Court is convinced that Donald's commingling of plan assets with the Company's general assets, and his use of those plan assets to pay Company creditors, rather than forwarding the assets to the Funds means that he "exercise[d] ... authority or control respecting ... disposition of [plan] assets," and hence is a fiduciary for purposes of imposing personal liability under ERISA. *See Yeseta v. Baima*, 837 F.2d 380 (9th Cir. 1988) (an employee in charge of plan administration and who, at the direction of company principals, withdrew plan assets, and placed those assets in the company's account to pay "necessary operating expenses" held personally liable as a fiduciary under ERISA); *Connors v. Paybra Mining Co.*, 807 F.Supp. 1242, 1246 (S.D.W.Va.1992), *appeal dis'd*, 21 F.3d 421 (4th Cir.1993) (company officers and directors exercised authority or control respecting management or disposition of plan assets, and thus were ERISA fiduciaries where they made "personal, conscious choices" to use withheld employee contributions to cover company expenses); *Reich v. Cook*, 94cv2069, slip op. at 10–11 (D.Conn. Mar. 24, 1997) (defendants fell within the ambit of section 1002(21)(A) where, even though other employees processed checks for their signature, they were the only signatories on the corporate account, and they "retained the authority to instruct those employees as to what checks to process and what monies were to be paid out[ ]").

■■ With respect to his fiduciary status under ERISA, John Terwilliger stands in a different position than does his brother Donald. Even though he was authorized to sign checks on the Company's account and he had some general knowledge that deductions were made from employees' wages, as the district court found, he was "primarily" a "production" person with "no responsibility for determining which of the company's creditors would be paid or in what order[.]" A168. In light of that finding, which is amply

supported by the record, this Court agrees with the district court that the record does not support a finding that John performed any of the functions enumerated in § 1002(21)(A) so as to render him personally liable for breach of fiduciary duty under ERISA. In contrast to his brother Donald, John Terwilliger did not exercise authority or control regarding the disposition of plan assets. Consequently, because John does not come within the statutory definition of ERISA, the district court correctly held that he is not personally liable thereunder for breach of fiduciary duty.

## III. Conversion

### A. Preemption

 ERISA's preemption clause is "conspicuous for its breadth." *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct. 403, 407, 112 L.Ed.2d 356 (1990); *see also Romney v. Lin*, 94 F.3d 74, 78 (2d Cir.1996)("The preemption language of ERISA … is purposefully sweeping…."). Therefore, despite the fact that neither the district court nor the parties considered the possibility that ERISA may preempt the Trustee's state law conversion claim,[7] this Court is compelled to do so.

 ERISA's preemption clause reads in relevant part as follows:

> Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter *relate to* any employee benefit plan described in section 1003(a) of this title….

29 U.S.C. § 1144(a) (emphasis added). Insofar as the Trustee is seeking to recover losses to the Funds based upon a common law theory of conversion, undoubtedly, ERISA preempts such a claim. *See District 65, UAW v. Harper & Row, Publishers, Inc.*, 576 F.Supp. 1468, 1487 (S.D.N.Y.1983) (ERISA preempted several common law

claims, including one for conversion). This common law conversion claim to recover losses to the Funds is nothing more than an "alternative theory of recovery for conduct actionable under ERISA," and as such is preempted by ERISA. *See Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir.1992) (citations omitted). Accordingly, the Court affirms the district court's dismissal of the conversion claim, insofar as the Trustee is seeking to recover employee contributions which were not forwarded to the Funds, albeit it for reasons different than those provided by the district court. To the extent that the Trustee's conversion claim is premised upon the failure of the Terwilligers to tender to the Union the withheld dues, however, ERISA does not preempt that particular claim. That is so because, as noted earlier, admittedly the Union dues were not "plan assets" subject to ERISA. *See* 29 C.F.R. § 2510.3–102(a) ("[T]he assets of the plan include amounts (other than union dues) … that a participant has withheld from his wages by an employer….").

### B. Merits

 Having determined that ERISA does not preempt the Trustee's common law conversion claim for the Union dues, the Court will next address the merits of that claim. "Conversion occurs when a defendant exercises unauthorized dominion over personal property in interference with a plaintiff's legal title or superior right of possession." *Rolls–Royce Motor Cars, Inc. v. Schudroff*, 929 F.Supp. 117, 124 (S.D.N.Y. 1996) (citing *Bankers Trust Co. v. Cerrato, Sweeney, Cohn, Stahl & Vaccaro*, 187 A.D.2d 384, 385, 590 N.Y.S.2d 201, 202 (1992)). "[I]t is well-settled that an action will lie under New York law for conversion of money where there is an obligation to return or otherwise treat in a particular manner the specific money in question." *Vanderbilt Univ. v. Dipsters Corp.*, 84 Civ. 7215–CHS,

---

7. In his complaint, the Trustee's conversion cause of action is based solely on New York common law. A13. On this appeal, he impermissibly broadens the scope of that conversion claim, arguing that the district court erred in not finding the Terwilligers liable for conversion under the federal common law of ERISA. Because the federal common law ERISA claim is not included in the complaint, this Court declines to consider that theory of liability at this point in the litigation.

1986 WL 10471, at *3 (S.D.N.Y. Sept. 17, 1986) (citation omitted). "The tort of conversion does not require defendant's knowledge that he is acting wrongfully, but merely an intent to exercise dominion or control over property in a manner inconsistent with the rights of another." *Fashions Outlet of America, Inc. v. Maharaj*, 88 Civ. 7231, 1991 WL 143421, at *2 (S.D.N.Y. July 22, 1991) (internal quotations and citations omitted).

There is no doubt on this record that Donald Terwilliger's actions satisfy that standard. He intended to and did use the withheld Union dues to pay Company creditors, rather than forwarding those monies to the Union as the collective bargaining agreement, to which he was a signatory, required. Nothing more is required to show conversion. *See Vanderbilt University*, 1986 WL 10471, at *2 (conversion established where the company president admitted that he intentionally deposited plaintiff's check into the company's account and that those proceeds were intentionally disbursed to the company's creditors). Thus, because Donald dealt with the Union dues contributed by the employees in a manner inconsistent with the employees' rights to that property, it does not matter, as the district court suggested, that he lacked wrongful intent. Wrongful intent simply is not an element of an otherwise valid conversion claim.

Furthermore, because "[i]t has long been established, . . . , that a corporate officer who commits or participates in a tort, even if it is in the course of his duties on behalf of the corporation, may be held individually liable[,]" the district court mistakenly relied upon the fact that Donald was acting on behalf of the Company to exonerate him from liability for conversion. *See Jami Marketing Servs., Inc. v. Howard*, 1988 WL 46106, at *3 (E.D.N.Y. April 26, 1988) (citations omitted).

Finally, to the extent the district court declined to hold Donald liable for conversion because the Union monies were not a "specific identifiable thing," in that they were not placed in a separate account, that reasoning also is flawed. In *Goldstein v. Mangano*, 99 Misc.2d 523, 417 N.Y.S.2d 368 (1978), a case remarkably similar to the present one, a union president and trustee of union pension funds commenced an action against a corporate employer and the company's vice-president, seeking to recover, *inter alia*, union dues which the company, approaching insolvency, failed to turn over to the union. In finding the company vice-president personally liable for conversion, the court rejected his argument "that this cause of action must fail because the funds were not segregated and specifically identifiable and, therefore, not appropriately the subject of an action in conversion." 99 Misc.2d at 526, 417 N.Y.S.2d at 371. In so holding, the court reasoned, "under the collective bargaining agreement a definite monthly sum of $6.00 per employee was deducted from each worker's wages and, . . ., the only active corporate officer was obligated to ensure that the corporation segregated these sums from the general corporate account and paid them over regularly to plaintiff." *Id.*

The same is true here. The fact that the employees' Union dues were not segregated, but instead placed in the Company's general account does not mean that those monies are not a "specific identifiable thing" for purposes of imposing liability for conversion. For all of these reasons, we find that the district court erred in holding that Donald is not liable for conversion of Union dues; and accordingly, we reverse and remand as to that claim.

Once again, John Terwilliger stands in a different position than does his brother Donald. Similar to the ERISA claims asserted against John, there is nothing in the record as it is presently constituted establishing that John exercised unauthorized dominion over the withheld Union dues. Prior to the Company's deteriorating financial condition, John, along with Donald, did sign Company checks for dues payable to the Union. A132. Absent from the record, however, is any proof that during the relevant time frame John signed Company checks payable to the creditors, rather than forwarding those monies to the Union. Nor, in contrast to Donald, is there any record proof that John was responsible for deciding that the creditors should be paid rather than the Union. Consequently, we find that the district court correctly held that John Terwilli-

ger is not liable for conversion of Union dues, although we do so for reasons different than the district court.

### CONCLUSION

For the foregoing reasons, we affirm the order of the district court dismissing the complaint as against John Terwilliger with respect to the ERISA claims. However, we reverse and remand to the district court those aspects of the order dismissing the ERISA claims with respect to Donald L. Terwilliger, III. On remand, the district court is directed to make findings with respect to the amount of damages for which Donald L. Terwilliger, III is personally liable for breach of fiduciary duty under ERISA. Likewise, we affirm the order of the district court dismissing the complaint as against John Terwilliger with respect to the conversion claim. We reverse and remand to the district court insofar as its order dismissed the conversion claim against Donald L. Terwilliger, III, however. On remand, the district court is directed to make finding as to the amount of damages for which Donald L. Terwilliger, III is liable for conversion of Union dues.

