**Lisa MacKAY, Plaintiff,**

v.

**RAYONIER, INC. and John C., Swingle, Defendants.**

**RAYONIER, INC., Plaintiff and Counterclaim Defendant,**

v.

**John C. SWINGLE, Defendant and Counterclaim Plaintiff.**

Nos. Civ. 3:96cv1582 (JBA), Civ. 3:96cv1872 (JBA).

United States District Court, D. Connecticut.

Sept. 11, 1998.

Kathryn Emmett, Emmett & Glander, Stamford, CT, for Lisa MacKay, plaintiff.

Daniel Schwartz, Day, Berry & Howard, Stamford, CT, Carla R. Walworth, John W. Hamlin, Sarah Elizabeth Graves, Paul, Hastings, Janofsky & Walker, Stamford, CT, for Rayonier, Inc, defendant.

Karen L. Karpie, Murphy, Laccavole & Karpie, Bridgeport, CT, J. Alvin Leaphart, Leaphart & Johnson, Jesup, GA, for John C. Swingle, defendant.

### Ruling on Rayonier's Motion to Dismiss Counts Two Through Five of Counterclaim [doc. # 47]

ARTERTON, District Judge.

These consolidated lawsuits stem from Lisa MacKay's allegation of sexual assault by

John Swingle to whom she had recently been assigned to report by her employer Rayonier. Litigation was commenced by MacKay against Swingle and Rayonier. Rayonier in turn sued Swingle, and Swingle then counterclaimed against Rayonier. The present motion to dismiss [doc. # 47] concerns Counts Two through Five of Swingle's counterclaim against Rayonier.

The five-count counterclaim is, as defendant Rayonier observes in its memorandum, "not a model of clarity." Count One of the counterclaim, not challenged by this motion to dismiss, is for breach of contract. Count Two alleges that Rayonier fired Swingle in violation of ERISA, 29 U.S.C. § 1001 et seq., in that Rayonier's decision to terminate Swingle was motivated by its intent to deprive Mr. Swingle of his ERISA benefits. Swingle further alleges in Count Two that Rayonier, as administrator of these plans, owed Swingle a fiduciary duty, which has been breached by its actions in denying him benefits under the Relocation Plan and Severance Plan.

Counts Three through Five of the counterclaim allege various state law causes of action. Count Three, for misrepresentation and detrimental reliance, alleges that Rayonier misrepresented that if Swingle accepted the position of Vice President, and moved from Georgia to Connecticut, he would get to the "Rule of 80," [1] and Swingle relied on this representation that he would be in the vice president's job for at least three years.

Count Four of the counterclaim alleges that Rayonier breached the covenant of good faith and fair dealing by terminating Swingle for exercising poor judgment when the defendant had not violated any stated company rules or policies.

Count Five of the counterclaim, alleging wrongful termination, simply states that the termination was made without just cause.

**Legal Standards**

In deciding a motion to dismiss, a court must construe in plaintiff's favor any well-pleaded factual allegations in the complaint. *Finnegan v. Campeau Corp.,* 915 F.2d 824, 826 (2d Cir.1990). Further, "[i]n determining the adequacy of a claim under Rule 12(b)(6), consideration is limited to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). Additionally, a court may dismiss the complaint only where it appears beyond doubt that plaintiff can prove no set of facts in support of his or her claim which would entitle him or her to relief. *Id.* (*citing Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

**Discussion**

Rayonier's Motion to Dismiss first argues that Count Two, the ERISA claim, must be dismissed for failure to exhaust administrative remedies. Secondly, Rayonier argues that Counts Three through Five, the state law claims, are preempted by ERISA. Finally, Rayonier argues that one of the plans at issue, the Rayonier Relocation Policy, is not even an ERISA-covered plan, and that Count Two should be dismissed as it relates to this plan, even if the exhaustion argument is rejected.

**Count Two: ERISA Claim**

*Exhaustion of Administrative Remedies*

Rayonier argues that Count Two should be dismissed for failure to exhaust administrative remedies. The primary purposes of the exhaustion requirement are to:

(1) uphold Congress' desire that ERISA trustees be responsible for their actions, not the federal courts;

(2) provide a sufficiently clear record of administrative action if litigation should ensue; and

(3) assure that any judicial review of fiduciary action (or inaction) is made under the arbitrary and capricious standard, not de novo.

---

**1.** Neither party defines for the Court the meaning of the "Rule of 80," but presumably they are referring to a program in which plan members become eligible for benefits when their age and years of service total eighty. *See, e.g., American Stores Co. v. American Stores Co. Retirement Plan,* 928 F.2d 986 (10th Cir.1991).

*Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588 (2d Cir.1993) (*citing Denton v. First Nat'l Bank of Waco, Texas,* 765 F.2d 1295 (5th Cir.1985)).

The Second Circuit has recognized "the firmly established federal policy favoring exhaustion of administrative remedies in ERISA cases." *Alfarone v. Bernie Wolff Construction,* 788 F.2d 76, 79 (2d Cir.1986). *See also Leonelli v. Pennwalt Corp.,* 887 F.2d 1195, 1199 (2d Cir.1989) (noting requirement that ERISA claimants exhaust administrative remedies provided for by their plan). In *Kennedy v. Empire Blue Cross and Blue Shield,* 989 F.2d 588, the Second Circuit again recognized the firm federal policy favoring exhaustion, and went on to explain that "exhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy." *Id.* at 594 (*citing Amato v. Bernard,* 618 F.2d 559, 567 (9th Cir.1980); *Leonelli v. Pennwalt Corp.,* 887 F.2d at 1199). The *Kennedy* court's primary concern was with the extent of the "futility exception" to the exhaustion requirement. "Where claimants make a 'clear and positive showing' that pursuing available administrative remedies would be futile, the purposes behind the requirement of exhaustion are no longer served, and thus a court will release the claimant from the requirement." *Id.* at 594.

A portion of Swingle's ERISA claim comes under § 510 of ERISA, 29 U.S.C. § 1140, which makes it unlawful for any person "to discharge, fine, suspend, expel, discipline, or discriminate against a participant or beneficiary ... for the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan." Some courts have held that exhaustion of administrative remedies is not a prerequisite for maintaining claims brought under § 510 of ERISA. *See Novak v. TRW, Inc.,* 822 F.Supp. 963, 969 (E.D.N.Y.1993) (*citing Lawford v. New York Life Ins. Co.,* 739 F.Supp. 906, 912 (S.D.N.Y.1990); *Zipf v. American Telephone & Telegraph Co.,* 799 F.2d 889, 891–92 (3d Cir.1986)); *see also Gray v. Briggs,* 1998 WL 386177 (S.D.N.Y. 1998). The *Lawford* court explained that "There is no evidence in any of the cases supporting an exhaustion requirement that Congress explicitly intended that claimants alleging wrongful termination should be required to avail themselves of the internal procedures of the entity which allegedly discriminated against them." 739 F.Supp. at 912. This logic is particularly appealing since no plan administrator's decision on any particular plan term is implicated by the employer's overall alleged motivation to deprive the discharged employee of benefits to which he or she may otherwise become entitled.

■ Swingle, subsequent to the filing of the motion to dismiss, did submit his claims to Rayonier's internal review administrative process. Rayonier now claims that this is an acknowledgment by Swingle that he should have exhausted his administrative remedies, and therefore the claims should be dismissed pending exhaustion. The exhaustion requirement clearly applies to Swingle's claims to specific Relocation and Severance Plan benefits, and they are accordingly DISMISSED pending administrative review. (*See* Countercl. ¶¶ 24–25).

■ However, the question of whether a claim brought pursuant to § 510 of ERISA is subject to the exhaustion requirement remains an open question. Concurring with the reasoning of the *Lawford* court, this Court concludes that such a requirement makes little sense in light of the intended purposes of exhaustion and the nature of § 510 claims. *See* 739 F.Supp. at 912. Accordingly, Rayonier's motion to dismiss the § 510 claim of Count Two for failure to exhaust administrative remedies is DENIED.

*Relocation Plan*

Rayonier also contends that one of the plans at issue, the Relocation Policy, is not an employee benefits plans as defined in ERISA, and therefore the Court should dismiss Count Two with respect to the Relocation Policy.

■ "ERISA was enacted because Congress found it desirable that 'disclosure be made and safeguards be provided with respect to the establishment, operation, and administration of [employee benefit] plans.'"

*Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 15, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987) (quoting 29 U.S.C. § 1001(a)). As ERISA's legislative history explains, "The focus of the statute is ... on the administrative integrity of benefit plans—which presumes that some type of administrative activity is taking place." *Id.* at 15–16, 107 S.Ct. 2211. In sum, the purpose of ERISA is to regulate employee welfare and benefit plans, and because only "plans" involve administrative activity potentially subject to employer abuse, the Supreme Court has held that the touchstone for application of ERISA is the existence of an undertaking or obligation by an employer requiring the creation of an ongoing administrative program. *Id.* at 12, 107 S.Ct. 2211. In determining whether the policy at issue constitutes a benefit plan for ERISA purposes, the Court must look to the circumstances surrounding the benefit offer, focusing on the presence or absence of factors which demonstrate the need for ERISA's protection of ongoing administrative activity from employer abuses. *See Fort Halifax,* 482 U.S. at 16, 107 S.Ct. 2211.

While it is doubtful that the necessary factors could be determined at this stage, Rayonier's contention as to the Relocation Policy is moot inasmuch as Swingle's claims to specific Relocation and Severance Plan benefits have been dismissed pending administrative review.

### Counts Three, Four, and Five: Preemption of State Law Claims

■ Section 514, 29 U.S.C. § 1144(a), provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." The basic purpose of ERISA preemption is "to avoid a multiplicity of regulation in order to permit the nationally uniform administration of employee benefit plans." *Burgio & Campofelice, Inc. v. New York State Dep't of Labor,* 107 F.3d 1000, 1008 (2d Cir.1997) (citation omitted). "ERISA's preemption clause is 'conspicuous for its breadth.'" *Lopresti v. Terwilliger,* 126 F.3d 34, 41 (2d Cir.1997) (citation omitted). "Consequently, the phrase 'relate to' is to be interpreted broadly, encompassing common

law causes of action that 'purport[ ] to provide a remedy for the violation of a right expressly guaranteed by [ERISA].'" *Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d 270, 288 (2d Cir.1992) (internal citations and quotations omitted). Where a state law cause of action is nothing more than an "alternative theory of recovery for conduct actionable under ERISA," it is preempted by ERISA. *See* 126 F.3d at 41 (*citing Diduck v. Kaszycki & Sons Contractors, Inc.,* 974 F.2d at 288). "[A] state law may 'relate to' a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans or the effect is only indirect." *Ingersoll–Rand Co. v. McClendon,* 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990).

*Count Three: Misrepresentation/Detrimental Reliance*

■ Count Three, for misrepresentation and detrimental reliance, alleges that at the time Swingle was being transferred to Connecticut, Rayonier "represented that if he accepted the position, he would get to the 'Rule of 80', which representation the Defendant relied upon when he accepted the position, and would have a satisfying, continued career with Rayonier." (Countercl.¶ 32).

■ In Connecticut, a cause of action for negligent misrepresentation lies where:

> One who, in the course of his business, profession or employment ... supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

*D'Ulisse–Cupo v. Board of Directors of Notre Dame High School,* 202 Conn. 206, 218, 520 A.2d 217 (1987) (*quoting Restatement (Second) of Torts* § 552 (1979)). An innocent misrepresentation of fact may nonetheless "be actionable if the declarant has the means of knowing, ought to know, or has the duty of knowing the truth." *Id.* at 217, 520 A.2d 217 (*quoting Richard v. A. Waldman & Sons, Inc.,* 155 Conn. 343, 346, 232 A.2d 307 (1967)).

Rayonier challenges the claim on the grounds that it is preempted by ERISA. In *Smith v. Dunham–Bush, Inc.*, 959 F.2d 6 (2d Cir.1992), the plaintiff sued under theories of breach of contract and negligent misrepresentation in state court, claiming that Dunham–Bush had made an oral promise to pay certain pension-related benefits in order to induce him to relocate to Connecticut. According to Smith's complaint, when he "expressed concerns about the inferiority of the United States affiliate's pension plan, Elliot assured him that Dunham–Bush would provide him with a benefits package comparable to what he would have received upon his retirement in the United Kingdom." *Id.* at 7. In upholding the district court's refusal, on preemption grounds, to remand the removed case to state court, the Second Circuit explained that Smith "makes explicit reference to the pension plan in his complaint. . . . the oral representation underlying this suit deals expressly and exclusively with the appellant's benefits." 959 F.2d at 10. In reality, the Second Circuit concluded, Smith's suit represented "an attempt to supplement the plan's express provisions and secure an additional benefit." *Id.*

In the recent case of *Hamburger v. Southern New England Telephone Co.*, 1998 WL 241214 (D.Conn. May 6, 1998), the plaintiff had elected to participate in an "Early Out Offer" based on the representation that he would receive a certain sum of money if he did so. Upon his early retirement, Hamburger was informed, without explanation, that the sum he was to receive was significantly less than what had been represented to him. On a motion to dismiss, the district court agreed that the misrepresentation claim must be dismissed as preempted by ERISA.

The pleading of this counterclaim appears to differ from the cases described above in that, although the alleged misrepresentation had ramifications for Swingle's pension benefits, the alleged misrepresentation did not misstate facts about the benefits themselves, but rather the terms and length of Swingle's employment. Although the pension plan is specifically invoked in Count Three, the claim is not that Rayonier misrepresented the terms or conditions of any pension plan, but that it misrepresented the terms of the job. The plan is involved only to the extent that the loss of eligibility for the plan is the measure of Swingle's detrimental reliance. In other words, while Swingle alleges that he was told that he would hold the job for at least three years, thus making him eligible to invoke the "Rule of 80", Swingle does not allege that any representation made to him was incorrect so far as what was needed for him to reach eligibility for the "Rule of 80", or what reaching the "Rule of 80" would entitle him to. In contrast to *Smith* and *Hamburger*, no misrepresentation has been alleged as to the actual eligibility requirements or entitlement to certain benefits.

Thus, Swingle's negligent misrepresentation claim, Count Three, is not preempted, and Rayonier's motion to dismiss as to that claim is DENIED.

*Count Four: Duty of Good Faith and Fair Dealing*

■ Rayonier further contends that Count Four, alleging a violation of the duty of good faith and fair dealing, is preempted by ERISA. Count Four states in relevant part that "Rayonier breached the duty of good faith and fair dealing by terminating the Defendant's employment for the stated reason, i.e. exercising poor judgment, when the Defendant had not violated any stated company rules or policies." (Countercl.¶ 35). In Count One, the breach of contract claim, Swingle alleges that he "had a written contract of at least three years with the Plaintiff which the Plaintiff breached by terminating the Defendant without valid cause." (Countercl.¶ 14).

In *Magnan v. Anaconda Indus.*, 193 Conn. 558, 479 A.2d 781 (1984), the Connecticut Supreme Court considered the application of the implied covenant of good faith and fair dealing in the employment context. The court explained that the Restatement (Second) of Contracts "recognizes an implied covenant of good faith and fair dealing in every contract without limitation." *Id.* at 566–67, 479 A.2d 781. In *Magnan*, the plaintiff had argued that the good faith principle is applicable to the termination of an employment contract as well as to its performance and

"subjects the employer to liability whenever an employee is discharged without just cause." *Id.* The Connecticut Supreme Court adopted a somewhat more limited position: "while we see no reason to exempt employment contracts from the implication of a covenant of good faith and fair dealing in the contractual relationship, we do not believe that this principle should be applied to transform a contract of employment terminable at the will of either party into one terminable only at the will of the employee or for just cause." *Id.* at 568–69, 479 A.2d 781. Traditionally, "an employment contract of indefinite duration is terminable at the will of either party." *Battista v. United Illuminating Co.*, 10 Conn.App. 486, 523 A.2d 1356 (1987) (*citing Magnan*, 193 Conn. at 562–63, 479 A.2d 781). "Breach of such an implied covenant cannot be predicated simply upon the absence of good cause for a discharge. We decline the invitation of the plaintiff to transform the requirement of good faith into an implied condition that an employee may be dismissed only for good cause." 193 Conn. at 571, 479 A.2d 781. The counterclaim alleges that the contract between Swingle and Rayonier was one for a specific minimum duration, which is not at this stage challenged. Thus the Court construes the allegation of breach of covenant of good faith and fair dealing to relate to and be dependant on Rayonier's alleged breach of an express contract of definite minimum duration.

■ On the question of whether the claim is preempted by ERISA, the Court agrees with Swingle that it is not. "Every contract carries an implied covenant of good faith and fair dealing requiring that neither party do anything that will injure the right of the other to receive the benefits of the agreement." *Habetz v. Condon*, 224 Conn. 231, 238, 618 A.2d 501 (1992). This duty to act fairly and in good faith in performance of a contract not only derives from the contract, but is defined by the contractual obligation. "It is a rule of construction designed to fulfill the reasonable expectations of the contracting parties as they presumably intended." 193 Conn. at 566–67, 479 A.2d 781. Rayonier has not challenged Swingle's breach of contract claim on preemption grounds, so to the extent that the breach of contract claim

states a separate cause of action from any claim Swingle may have under ERISA under Count Two, Count Four is not preempted, and Rayonier's motion to dismiss as to this claim, as limited above, is DENIED.

### Count Five: Wrongful Discharge

■ The substance of Count Five states that "[t]he termination of the Defendant's employment by Rayonier was made without just cause." Although the allegations of Count Five are sparse, Swingle has previously alleged in Count Two that the termination was for the purpose of depriving him of ERISA benefits. This count appears to be nothing more than an alternate way to express that alleged wrong, in the absence of any other factual specificity to distinguish it.

In *Ingersoll–Rand*, 498 U.S. 133, 111 S.Ct. 478, 112 L.Ed.2d 474, the plaintiff had brought a claim pursuant to Texas state law, claiming that the principal reason for his termination was the company's desire to avoid making contributions to his pension fund. The Supreme Court explained that "McClendon's claim falls squarely within the ambit of ERISA § 510." *Id.* at 143, 111 S.Ct. 478. The Texas cause of action, the Supreme Court further clarified, purported "to provide a remedy for the violation for a right expressly guaranteed by § 510. . . . When it is clear or may fairly be assumed that activities which a State purports to regulate are protected by § 510 of ERISA, due regard for the federal enactment requires that state jurisdiction must yield." *Id.* at 145, 111 S.Ct. 478 (citations and internal quotations omitted). Where, as here, the plaintiff claims that the motivation for discharge was the employer's attempt to evade paying benefits, the claim falls squarely within the scope of 510, and thus plaintiff's state law cause of action for wrongful termination is preempted.

Accordingly, the motion to dismiss Count Five of the counterclaim, for wrongful termination, is GRANTED on grounds of preemption.

### Conclusion

For the foregoing reasons, Rayonier's Motion to Dismiss [doc. # 47] is GRANTED in

part and DENIED in part. Specifically, it is GRANTED in part and DENIED in part as to Count Two, DENIED as to Counts Three and Four, and GRANTED as to Count Five.

**IT IS SO ORDERED.**