Walter ULLRICH, Plaintiff,

v.

LINOTYPE–HELL CO. and Heidelberg USA, Inc., Defendants.

No. 00–CV–4316 (JS).

United States District Court,
E.D. New York.

Feb. 7, 2002.

Neal Brickman, New York City, for Plaintiff.

David R. Kresser, Fisher & Phillips LLP, Atlanta, GA, Richard G. Kass, Rains & Pogrebin, P.C., Mineola, NY, for Defendants.

## MEMORANDUM AND ORDER

SEYBERT, District Judge.

Walter Ullrich ("Plaintiff") filed a complaint against Linotype–Hell Co. ("Linotype") and Heidelberg USA, Inc. ("Heidelberg") (Linotype and Heidelberg shall be referred to collectively herein as "Defendants") alleging two causes of action against Defendants. Plaintiff's first cause of action alleges that Defendants violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et. seq.* ("ERISA") and his second alleges that he was fraudulently induced, pursuant to New York State law, to return to his position at Linotype.

Defendants have moved for summary judgment, pursuant to Fed.R.Civ.P. 56. Defendants argue that Plaintiff's second claim must be dismissed because it is preempted by ERISA. They further argue that Plaintiff's first claim, seeking additional severance benefits under Section 502(a)(1)(B) of ERISA must fail. The Severance Plan for Salaried Employees of Linotype–Hell Company (the "Plan") designates an administrator and grants the administrator the discretion and authority to determine eligibility under, and to construe the terms of, the Plan [1]. Such designation, Defendants argue, mandates that this Court review the Administrator's decision to determine only whether such decision was arbitrary and capricious.

## FACTUAL BACKGROUND

Plaintiff was initially hired as an employee of a predecessor of Linotype in 1975. *See Ull. Aff.* ¶ 2. Defendant Linotype acquired Mergenthaler Linotype Company ("Mergenthaler") in October of 1993 and Heidelberg acquired Linotype in December of 1996 and merged the two

---

1. The Plan designates the Company as the administrator ("Administrator") and permits the Company to designate any employee to carry out the Company's responsibilities under the Plan. The Plan further provides that "Plan Administrator shall have discretionary authority to decide for each employee of Company all questions about eligibility, entitlement to Severance, and the date on which eligibility or entitlement ceases." *Ull. Depo* Ex. 3.

companies shortly thereafter. *Defendants' Rule 56.1 Statement* ¶¶ 2–3. Plaintiff was initially employed by Mergenthaler and subsequently by Linotype. Linotype decided to reduce its workforce in October of 1993 and Plaintiff's employment was terminated pursuant to a plan of reduction. *See id.* Plaintiff was covered by the Plan and at the time of his termination was entitled to, and did receive, severance pay pursuant to the terms of the Plan in the amount of $58,534.82. *See id.* The amount that Plaintiff received as severance when he was first laid off is not in dispute.

In early July of 1994, Plaintiff and two employees of Linotype, Danny Herzka and Jack Bruger, met to discuss Plaintiff's future employment opportunities at Linotype. Plaintiff sought to be rehired "as if he had never left," in terms of the benefit packages available to him, and he expressed as much to Mr. Herzka. *Id.* at ¶¶ 13–16. Plaintiff claims that he was told that "all benefit entitlements would be based on his original start-up date." *Comp.* ¶ 10. Defendants deny this statement in its entirety. *See Answer and Aff. Def.,* ¶ 10. On August 8, 1994, Plaintiff was rehired and recommenced employment for Linotype in the same capacity as before his departure. *See id.* at ¶ 17. Upon being rehired, but prior to commencing employment, Plaintiff received two separate letters from the personnel department at Linotype. The first letter, from Elizabeth Allen–Banks, the Human Resources Manager, stated that all benefit entitlements will be based on Plaintiff's Vesting and Credited Service Dates, which are both December 8, 1975 [2]. *See id.* at ¶ 16. The second letter, dated August 8, 1994 from Michelle Flaherty, Senior Benefits Administrator, further defines the above mentioned dates and notes that such dates are those upon which vesting is based for the Pension and Savings Plan. *See Defendants' Rule 56.1 Statement* ¶ 18 [3]

.

Plaintiff worked for Linotype from the date of his rehire, August 8, 1994, through December 31, 1997. Plaintiff was terminated after Heidelberg merged with Linotype. Plaintiff was offered the opportunity to relocate to Atlanta and to continue working for the company, but declined and was paid severance pursuant to the terms of the Plan of $34,319.04 [4]. The severance

---

**2.** The actual language of the letter is as follows:

Based on an August 8, 1994 start date, you will have a Vesting Service Date of 12/08/75 and a Credited Service Date of 12/8/75. All benefits entitlements will be based on these dates.

*Ex. 7 to Ull. Depo.*

Interestingly, the third to last paragraph of the letter notes that "[t]his offer does not constitute a contract of employment. Your continued employment will be based upon your performance with LINOTYPE–HELL COMPANY, adherence to all Company rules and our mutual desire to continue our employment relationship." *Id.*

**3.** The terms of the letter dated August 8, 1994 are as follows:

Based on the following hire/termination dates, we have calculated your Credited Service Date and Vesting Service Date:

Hire Date: 12/8/75 Termination Date: 10/15/93

Rehire Date: 9/8/94

Your Credited Service Date is 12/08/75. This Date is used for calculating vacation days and short term disability.

Your Vesting Service Date is 12/08/75. Vesting for the Pension Plan and Savings Plan will be based on your vesting service date.

The calculation of your pension benefit does not include period of breaks-in-service. You have a break-in-service equaling .7500 years.

*Ex. 8 to Ull. Depo.*

**4.** The Plan provides that "[a]n employee … shall be eligible for coverage under the Plan … as of his most recent date of hire if he or she is: (i) a full time salaried employee; and (ii) not ineligible under Section 3(b)." *Plan* pg. 1. The Plan further notes, where all calcu-

package was comprised of the following payments: two weeks base pay plus two weeks pay for each year of service from his most recent date of hire plus an additional thirteen weeks pay granted to him as an incentive to continue his employment with Linotype until December 1997. Plaintiff claims that he is entitled, pursuant to the terms of the Plan and based upon both oral and written representations made to him prior to his recommencement of employment, to a severance package based upon his initial hire date of December 1975. If the calculation were based upon the initial hire date, Plaintiff would be entitled to receive an additional thirty eight weeks of pay. Plaintiff was paid severance pay when he was initially terminated which covered the period dating from his initial hire until the date that the employment ceased. Plaintiff seeks payment for the same period for which he was initially paid, but concedes that he should not be credited for the period of time during which he was not employed.

## LEGAL STANDARD

A district court may properly grant summary judgment only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden of proof is on the moving party to show that there is no genuine issue of material fact, *Gallo v. Prudential Residential Servs., L.P.,* 22 F.3d 1219, 1223 (2d Cir.1994) (citing *Heyman v. Commerce & Indus. Ins. Co.,* 524 F.2d 1317, 1320 (2d Cir.1975)), and "all ambiguities must be resolved and all inferences drawn

in favor of the party against whom summary judgment is sought." *Id.* (citing *Eastway Constr. Corp. v. City of New York,* 762 F.2d 243, 249 (2d Cir.1985)); *see also Hayes v. New York City Dept. of Corrections,* 84 F.3d 614, 619 (2d Cir.1996). "Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citing 10A Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure* § 2725, at 93–95 (1983)).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505 (quoting *First Nat'l Bank v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)). Under the law of the Second Circuit, "when no rational jury could find in favor of the nonmoving party because the evidence is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper." *Gallo,* 22 F.3d at 1224 (citing *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988)). Mere conclusory allegations, speculation or conjecture will not avail a party opposing summary judgment. *See Kulak v. City of New York,* 88 F.3d 63, 71 (2d Cir.1996).

It is within this framework that the Court addresses the present summary judgment motion.

(1) Preclusion of Plaintiff's fraud claim

Defendants argue that Plaintiff's second cause of action, state law fraudulent in-

lations are explained that "[s]ervice prior to the most recent date of hire shall be excluded." *Id.*

ducement, must be dismissed because, as a matter of law, it is preempted by ERISA. Plaintiff claims that "Linotype–Hell agreed that all of [Plaintiff's] benefits entitlements would have a vesting date of December 8, 1975" to induce him to work for Linotype. *Comp.* ¶ 27. Plaintiff further claims that he decided to recommence employment for Linotype "[i]n reliance upon Linotype–Hell's promise to pay all benefits based on his original start-up date." *Id.* at ¶ 28. Finally, Plaintiff claims that statements were made by Elizabeth Allen–Banks wherein he was promised that "his benefits would be calculated and paid out on the basis of his original start date of December 8, 1975 without break and without limitation." *Id.* at ¶ 30. Plaintiff argues that his second cause of action should not be preempted by ERISA because the fraud claim is not based upon provisions of the Plan or amendments thereto rather, it is "based on the misrepresentation that if Plaintiff would return to the Company, his original start date of December 8, 1975 would be reinstated." *Plaintiff's Memorandum of Law in Opposition to Defendants' Summary Judgment Motion*, pg. 8.

The preemption section of ERISA provides that ERISA "shall supercede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The language of the statute has been interpreted broadly to preempt many state law causes of action and thereby promote uniformity of laws regarding benefit plans. In interpreting the preemption language of the statute, the Supreme Court has held that "a state law 'relates to' an ERISA plan 'if it has a connection with or reference to such a plan.'" *Egelhoff v. Egelhoff*, 532 U.S. 141, 121 S.Ct. 1322, 1327, 149 L.Ed.2d 264 (2001) (quoting *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 97, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983)).

■ "Civil enforcement provisions in ERISA [are] the exclusive vehicle for actions by ERISA-plan participants asserting improper processing of a claim for benefits." *Camarda v. Pan American World Airways, Inc.*, 956 F.Supp. 299, 305 (E.D.N.Y.1997) (citing *Pilot Life v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). More specifically, "[c]ommon law claims of promissory estoppel, breach of contract, or fraud ... are pre-empted under ERISA." *Sandler v. Marconi Circuit Technology Corp.*, 814 F.Supp. 263, 265 (E.D.N.Y.1993). The preemption doctrine was intended to encompass "common law causes of action that 'purport to provide a remedy for the violation of a right expressly guaranteed by [ERISA].'" *MacKay v. Rayonier, Inc.*, 25 F.Supp.2d 47, 51 (D.Conn.1998) (quoting *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 288 (2d Cir.1992)). Finally, " '[a] state law may relate to a benefit plan, and thereby be preempted, even if the law is not specifically designed to affect such plans or the effect is only indirect.'" *Id.* (quoting *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 139, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

Plaintiff argues that his claim should not be preempted because "the claim clearly concerns misrepresentations about the terms of Plaintiff's employment, not the Plan or any benefits thereunder." *Plaintiff's Memorandum of Law in Opposition to Defendants' Summary Judgment Motion*, pg. 7. Plaintiff cites *MacKay* for the proposition that a claim alleging a misrepresentation of the terms or length of employment is not preempted by ERISA and, therefore, Plaintiff argues, that because his claim regards the term of his employment it should not be preempted. *Id.* (citing *MacKay*, 25 F.Supp.2d at 52).

■ Plaintiff's argument that his fraudulent inducement claim should be

permitted to stand is an effort to circumvent the preemption doctrine. Plaintiff's fraudulent inducement claim relates directly to the benefits to which he alleges he is entitled under the Plan. Whether he frames the argument as one for fraudulent inducement or under ERISA, the claim is based upon his assertion that changes were made to the standard severance plan through a variety of letters and oral representations. Any claim relating to an employer's severance plan is preempted by ERISA. *See Tappe v. Alliance Capital Mgmt. L.P.,* 177 F.Supp.2d 176, 187 (S.D.N.Y.2001). The Supreme Court recently stated that "[o]ne of the principal goals of ERISA is to enable employers 'to establish a uniform administrative scheme, which provides a set of standard procedures to guide processing of claims and disbursement of benefits.'" *Egelhoff,* 121 S.Ct. at 1328 (quoting *Fort Halifax Packing Co. v. Coyne,* 482 U.S. 1, 9, 107 S.Ct. 2211, 96 L.Ed.2d 1 (1987)). Permitting Plaintiff to maintain his fraudulent inducement claim when the gravamen of that claim rests on a factual determination of the provisions of the Plan and the permissibility of purported amendments thereto, both of which are subject to the provisions of ERISA, would not promote uniformity of the laws governing such plans. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's second cause of action is GRANTED because, as a matter of law, Plaintiff's fraudulent inducement claim is preempted by ERISA.

### (2) Plaintiff's claim alleging a violation of ERISA

As more fully set forth above, Plaintiff claims that Defendants breached their contract with Plaintiff to pay him a severance package based upon the date he was initially hired. The administrator of the Plan, Linotype, determined that, pursuant to the terms of the Plan, he was only entitled to a severance package based upon the date of his most recent hire. A preliminary issue that must be addressed is the standard of review that this Court must employ in deciding Plaintiff's claim. Defendants argue that "the decision to deny Plaintiff's claim for additional severance benefits [made by the Administrator] must be affirmed unless it was arbitrary and capricious." *Defendants' Memorandum of Law in Support of their Summary Judgment Motion,* pg. 4 (citing *Miller v. United Welfare Fund,* 72 F.3d 1066, 1070 (2d Cir.1995) (finding that the standard that a district court must employ when reviewing an administrative decision requires a determination of whether the decision was arbitrary and capricious, so long as the plan grants fiduciary discretionary authority to an administrator to construe the terms of the plan)). Plaintiff argues that the Court should employ a de novo standard of review because the administrator did not in fact have discretion to determine Plaintiff's eligibility for coverage. *See Plaintiff's Memorandum of Law in Opposition to Defendants' Summary Judgment Motion,* pg. 10.

The parties agree that if the Administrator did have discretion to make the determination as to Plaintiff's benefits, the proper standard of review is the arbitrary and capricious standard. Plaintiff asserts that the Administrator did not have discretion to make the determination as to him because none of the four exceptions to eligibility to partake in the Plan, as defined therein, could be attributed to him, requiring that he be covered by the Plan and, therefore, according to Plaintiff, removing any discretion from the Administrator. Plaintiff notes that he has denied, in his Rule 56.1 Counter Statement, that "the Plan afforded Linotype the broad or fiduciary authority to make any such de-

terminations for any employees." *Id.* at 10.

■ The Plan specifically gives discretionary authority to the "Plan Administrator" to determine "for each employee of [sic] Company all questions about eligibility, entitlement to Severance, and the date on which eligibility or entitlement ceases." *Ull. Depo.* Ex. 3. The amount of money to which a Plan participant is entitled, based upon the terms of the Plan, is most certainly covered by the grant to the Administrator of discretionary authority to determine "all questions about eligibility [or] entitlement to Severance." *Id.* Plaintiff's interpretation that the terms of the Plan preclude the Administrator from making determinations, as defined above, in its discretion if a party is an "Eligible Employee" pursuant to the terms of the Plan, is incorrect. Moreover, Plaintiff ignores language in the very section of the Plan that defines "Eligible Employee," which provides that such employee "shall be eligible for coverage under the Plan (an "Eligible Employee") as of his most recent date of hire." *Id.* Viewing the evidence in a light most favorable to Plaintiff, the Court finds that the Plan does grant discretionary authority to the Administrator to make the determinations as to employees' eligibility and to construe the terms of the Plan as it applies to such employees. Accordingly, the Court will review the Administrator's decision to grant Plaintiff severance based upon his start date in 1994 to determine whether such decision was arbitrary or capricious.

■ The question for this Court to consider is "whether the decision [made by the Administrator] was based on a consideration of the relevant factors and whether there was been a clear error of judgment." *Jordan v. Retirement Comm. of Rensselaer Polytechnic Inst.,* 46 F.3d 1264, 1271 (2d Cir.1995) (internal quotation marks

and citations omitted). If the administrative determination is "without reason, unsupported by substantial evidence or erroneous as a matter of law," this Court has the power to overturn that decision. *Pagan v. NYNEX Pension Plan,* 52 F.3d 438, 442 (2d Cir.1995) (internal quotation marks and citations omitted). Thus, on a motion for summary judgment, it must be determined whether there exists a material issue of fact in dispute regarding the factors considered by the Administrator, and whether as a matter of law his or her decision based on those factors constitutes a clear error of judgment.

■ No clear or legal error exists here, nor does the Administrator's decision lack a basis in fact. Plaintiff has completely failed to raise any genuine issue of material fact which would make the Administrator's determination arbitrary or capricious. The terms of the Plan expressly *exclude* service prior to the "most recent date of hire." *Ull. Depo.* Ex. 3. Plaintiff argues that there is an inherent conflict of interest in designating Linotype as the Administrator of the Plan and that such conflict caused the Administrator to ignore facts required to make an informed decision, to ignore the oral and written representations made to Plaintiff prior to the commencement of his employment and to fail to interview people that may have substantiated Plaintiff's position. *See Plaintiff's Memorandum of Law in Opposition to Defendants' Summary Judgment Motion,* pg. 13. Defendants argue that Plaintiff cannot meet his burden because he was properly paid pursuant to the terms of the Plan. *See Defendants' Memorandum of Law in Support of their Summary Judgment Motion,* pg. 5.

As a matter of law, a benefit plan covered by ERISA cannot be amended orally. ERISA requires that all employee benefit plans be in writing, the amendment proce-

dures must be explicitly set forth and those whom must approve an amendment must be identified. *See* 29 U.S.C. § 1102. The Plan requires a resolution by the Board of Directors of Linotype approving any amendment made to the Plan. Accordingly, neither the oral representations made to Plaintiff prior to employment nor the letters received by Plaintiff can act to amend the terms of the Plan, because neither were approved by a resolution of the Board of Directors.

The Plan explicitly sets forth the formula to determine the amount of severance benefits to which each employee is entitled. An Eligible Employee is entitled to "two (2) weeks of base pay plus two (2) weeks of base pay for each year of continuous service." *Ull. Depo.* Ex. 3. To reiterate, an "Eligible Employee" is "(i) a full time salaried employee; and (ii) not ineligible under Section 3(b)." *Id.* Section 3(b) provides that "[a]n employee of Company is not an Eligible Employee if: (i) he has waived coverage pursuant to the Plan; (ii) he is covered by a collective bargaining agreement with [sic] Company that does not expressly provide coverage pursuant to the Plan; (iii) he is covered by a separation agreement with [sic] Company which excludes Severance pursuant to the Plan; or (iv) he is covered by another severance plan adopted by the Company." *Id.* Finally, eligibility and benefits are explicitly based upon the "most recent date of hire." *Id.*

Plaintiff, upon termination was eligible for severance benefits as follows: 2 weeks pay plus two weeks for each continuous year of service since the date of the most recent hire (August 8, 1994 through December 31, 1997 is 3 years),[5] for a total of 8 weeks of pay. Plaintiff was offered an incentive of an additional 13 weeks of sev-

erance pay to stay with Defendants as an employee for a period of time, which he accepted. Therefore, upon his termination, Plaintiff should have received 21 weeks of severance pay. This is consistent with the determination of the Administrator. This Court finds that the Administrator's decision was neither arbitrary nor capricious but rather based in fact and law. Accordingly, the Administrator's decision is AFFIRMED and Defendants' summary judgment motion as to Plaintiff's ERISA claim is GRANTED.

### CONCLUSION

For all the aforementioned reasons, Defendant's motion for summary judgment is GRANTED in its entirety.

The Clerk of the Court is directed to mark this case as closed.

SO ORDERED.

---

5. Note that a "partial period of more than six (6) months of continuous service shall be counted as a full year of continuous service." *Ull. Depo.* Ex. 3.