TRUSTEES OF MICHIGAN REGIONAL COUNCIL OF CARPENTERS' EMPLOYEE BENEFITS FUND; Trustees of Michigan Regional Council of Carpenters' Annuity Fund; Trustees of Carpenters' Pension Trust Fund—Detroit and Vicinity; Trustees of the Detroit Carpentry Joint Apprenticeship and Training Fund; Trustees of the U.B.C. Advancement Fund; Trustees of the Carpenters' Working Dues Fund; Trustees of the Carpenters' Special Assessment Fund; The Michigan Regional Council of Carpenters, United Brotherhood of Carpenters and Joiners of America, Plaintiffs;

and

Comerica Bank, Intervening Plaintiff;

v.

H.B. STUBBS COMPANY, n/k/a H.B. Stubbs Company, L.L.C.; H.B. Stubbs Holdings, Inc.; H.B. Stubbs Company, L.L.C.—East; H.B. Stubbs Company, L.L.C.—West; H.B. Stubbs Properties, L.L.C; Scott Stubbs; Stephen H. Stubbs; and Kenneth W. Jacobson, Defendants.

No. 2:14–cv–11393.

United States District Court,
E.D. Michigan,
Southern Division.

Signed Oct. 27, 2014.

880

Lauren E. Crummel, Bryan M. Beckerman, Novara Tesija, P.L.L.C., Southfield, MI, for Plaintiffs.

Dennis J. Levasseur, Bodman, Detroit, MI, for Intervening Plaintiff.

Erika D. Hart, Charles J. Taunt Assoc., Birmingham, MI, for Defendants.

## OPINION AND ORDER GRANTING IN PART AND DENYING ·IN PART PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT [60]

LAURIE J. MICHELSON, District Judge.

When facing financial hardship, a company must often make difficult decisions about which obligations to pay. In this case, several entities operating under the "H.B. Stubbs" name lost half their collective business and did not make contributions to an employee-benefit fund, a pension fund, and an apprenticeship fund (among others), each governed by the Employee Retirement Income Security Act of 1974. The trustees of the funds ("Trustees") (along with The Michigan Regional Council of Carpenters, United Brotherhood of Carpenters and Joinders of America ("the Union")), filed this lawsuit asserting, among other things, that three officers and/or owners of the H.B. Stubbs entities, Scott Stubbs ("Scott"), Stephen H. Stubbs ("Stephen"), and Kenneth W. Jacobson ("Jacobson"), breached fiduciary duties they owed to the funds under ERISA by electing to pay other expenses instead of making contributions to the funds. If the Trustees can prove this claim, Scott, Stephen, and Jacobson would be personally liable for the unpaid employer contributions.

In April 2014, Defendants moved to dismiss Plaintiffs' breach-of-fiduciary-duty claim pursuant to Federal Rule of Civil Procedure 12(b)(6). This Court granted the motion in part; focusing on the fact that Plaintiffs had not pled any contractual language indicating that H.B. Stubbs and the funds had agreed to treat unpaid em-

ployer contributions as plan assets. Without that allegation, this Court reasoned, Plaintiffs could not plead a requirement for ERISA fiduciary status: that Scott, Stephen, or Jacobson exercised any authority or control over plan assets when they paid other creditors instead of the funds. Dismissal, however, was without prejudice as the Court thought that Plaintiffs could amend their complaint to address their pleading deficiencies.

Before the Court is Plaintiffs' motion for leave to amend their complaint to, primarily, replead their ERISA breach-of-fiduciary claim against Scott, Stephen, and Jacobson. (Dkt. 60.) The motion was fully briefed and the Court heard oral argument. Following oral argument, Plaintiffs submitted a revised proposed amended complaint (Dkt. 67, 2d Proposed Am. Compl.) and Defendants filed a sur-reply brief, which the Court has also considered. Having been so advised, the Court will largely deny Plaintiffs' motion, including Plaintiffs' request to add a breach-of-fiduciary-duty claim.

## I.

## A.

In their original Complaint, Plaintiffs claimed that Scott, Stephen, and Jacobson paid certain of H.B. Stubbs' business obligations but did not make required contributions to the funds and, in so doing, breached fiduciary duties they owed to the funds under ERISA. (Dkt. 1, Compl. ¶¶ 25–33.) In an Opinion and Ordered entered on July 17, 2014 (the "July 2014 Opinion"), the Court dismissed this claim without prejudice. (Dkt. 59, July 17, 2014, Op. & Order on Defs.' Mot. to Dismiss); *Trs. of Michigan Reg'l Council of Carpenters' Emp. Benefits Fund v. H.B. Stubbs Co.*, 33 F.Supp.3d 884 (E.D.Mich.2014) (Michelson, J.).

Threshold was whether Plaintiffs had adequately pled that Scott, Stephen, and Jacobson were fiduciaries under ERISA. The controlling provision of ERISA states, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). Thus, the Court explained that § 1002(21)(A)(i) set forth two requirements that Plaintiffs had to plead: (1) that the unpaid employer contributions were "[plan] assets," and (2) that Scott, Stephen, and Jacobson exercised "authority or control" over the "management or disposition" of those assets. *H.B. Stubbs*, 33 F.Supp.3d at 889.

The Court's focus was on the "plan assets" requirement. *See H.B. Stubbs*, 33 F.Supp.3d at 888–97. Acknowledging language in several opinions from this District suggesting that employer contributions are per se plan assets once due and owing, *id.* at 893–94, the Court concluded that those opinions are better read as consistent with the so-called "proper" rule "that unpaid employer contributions are not assets of a fund unless the agreement between the fund and the employer specifically and clearly declares otherwise," *id.* at 891–92 (internal quotation marks omitted), at 894–95. Because the Trustees had not "pled contract language indicating that H.B. Stubbs' contributions became vested plan assets once due, or even included with their Complaint the relevant agreements such that the Court might determine for itself whether the H.B. Stubbs entities and the funds agreed that H.B. Stubbs' contributions would become plan assets once due," this Court held that it was "implausible that Scott, Stephen, or Jacobson acted with authority or control over plan assets when they paid H.B. Stubbs' other credi-

tors before the funds." *Id.* at 892. "It follow[ed] that Count III[did] not adequately plead that Scott, Stephen, or Jacobson breached any fiduciary duties imposed by ERISA and owed to the funds." *Id.*

Following that holding, this Court added,

> even if the Court were to agree with the Trustees to the extent that the unpaid employer contributions were plan assets once due, it does not necessarily follow that Scott, Stephen, or Jacobson breached fiduciary duties owed to the funds by paying H.B. Stubbs' other debts instead of the funds. On this point, the Court finds *Sheet Metal Local 98 Pension Fund v. AirTab, Inc.,* 482 Fed.Appx. 67 (6th Cir.2012) persuasive.

*H.B. Stubbs,* 33 F.Supp.3d at 896 (emphasis added). After discussing *AirTab* and citing *Trustees of the Graphic Communications International Union Upper Midwest Local 1M Health & Welfare Plan v. Bjorkedal,* 516 F.3d 719, 732 (8th Cir. 2008), this Court further stated,

> Under [these two] cases, the Trustees' assertion that Scott, Stephen, and Jacobson breached fiduciary duties owed to the funds by paying the H.B. Stubbs entities' other creditors instead of the funds does not, without more, show that Scott, Stephen, and Jacobson exercised the requisite authority or control over plan assets such that they acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A)(i).

As will be discussed below, the Court did not intend this statement to be part of its holding.

### B.

Plaintiffs' revised proposed amended complaint attempts to replead a breach-of-fiduciary-duty claim against Scott, Stephen, and Jacobson. (*See* Dkt. 67, 2d Proposed Am. Compl. ¶¶ 19–77.)

Apparently responding to the Court's earlier conclusion that Plaintiffs had not adequately pled that H.B. Stubbs and the funds agreed that employer contributions would be plan assets once due, Proposed Count II pleads, "[t]he Trust Agreements for the Funds, incorporated by the relevant [collective bargaining agreement] . . . provide that unpaid contributions become plan assets at the time they become due." (2d Proposed Am. Compl. ¶ 27.) Plaintiffs have also now incorporated into their Proposed Amended Complaint a collective bargaining agreement and three trust agreements. (*Id.*) Critical to Plaintiffs' motion is that on January 14, 2014, "Union Trustees" and "Employer Trustees" executed addenda to each of the three trust agreements ("the Addenda"). Each of the Addenda provides in part:

> *Employer contributions become Plan assets at the time they are due and owing to the Fund.* Title to all Employer Contributions paid into and/or due and owing to the Fund shall be vested in and remain exclusively in the Board of Trustees of the Fund. An Employer shall have no right, title or interest in the Employer contributions owing to the Fund. The Board of Trustees may enforce payment of contributions in any manner including, without limitations, suit for collection in any court of competent jurisdiction.

(Benefits Fund Addendum at Pg ID 483 (emphasis added); *see also* Pension Fund Addendum at Pg ID 507; Annuity Fund Addendum at Pg ID 543.)

Proposed Count II also attempts to address this Court's prior statements regarding the "authority or control" prong of 29 U.S.C. § 1002(21)(A)(i). Plaintiffs allege that each of Scott, Stephen, and Jacobson "utilized the accrued outstanding fringe

benefit contributions and monies within his possession, custody and/or control for purposes other than payment to Plaintiffs" (2d Proposed Am. Compl. ¶¶ 37, 52, 67). According to Plaintiffs, each of Scott's, Stephen's, and Jacobson's "failure to turn over the plan assets, failure to make fringe benefit contributions to Plaintiffs, failure to account for those contributions, and misuse of funds and monies otherwise payable to Plaintiffs constitutes a breach of fiduciary duties regarding the Funds pursuant to 29 U.S.C. § 1104(a)(1)(A) and are violations of 29 U.S.C. §§ 1145, 1104 and 1109(a)." (Id. ¶¶ 39, 54, 69.)

In apparent response to an argument Defendants raised at the ·hearing—that Scott, Stephen, and Jacobson had absolutely no rights over plan assets under the plain language of the Addenda—Plaintiffs revised proposed amended complaint includes a new claim that Scott, Stephen, and Jacobson wrongfully converted assets of the funds. (2d Proposed Am. Compl. ¶¶ 78–87.)

Plaintiffs seek leave to add these allegations under Federal Rule of Civil Procedure 15(a)(2). (Pl.'s Mot. to Amend at 3.)

## II.

■ Rule 15(a)(2) provides, "In ... cases [other than where a party may amend its pleading as a matter of course under Rule 15(a)(1) ], a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Courts consider a number of factors in deciding whether to grant leave:

undue delay in filing; lack of notice to the opposing party; bad faith by the moving party; repeated failure to cure deficiencies by previous amendments; undue prejudice to the opposing party; and futility of amendment. *Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 458 (6th Cir.2001).

■ Of these factors, Defendants only seriously argue futility. (*See* Defs.' Resp. to Mot. to Amend at 2–3.)[1] A proposed claim is futile if it fails to state a claim upon which relief may be granted, as that phrase is used in Rule 12(b)(6). *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420 (6th Cir.2000) ("A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss."). To survive a Rule 12(b)(6) motion, a plaintiff's claim must set forth "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

## III.

Defendants argue that Plaintiffs' re-pled breach-of-fiduciary-duty claim fails to state a claim for relief because Plaintiffs have still not sufficiently pled that Scott, Stephen, or Jacobson are fiduciaries under ERISA. (*See generally* Dkt. 61, Defs.' Resp. to Pls.' Mot. to Amend.) As noted, under ERISA, "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or

---

1. In the conclusion section of their response brief, Defendants mention prejudice in passing, asserting that Plaintiffs had recently produced the trust agreements and addendums and noting the then-upcoming discovery deadline. (Defs.' Resp. at 9.) But Defendants have not identified any additional discovery they need in view of the recently-produced agreements. (*See id.*) Defendants have thus failed to demonstrate prejudice precluding amendment. Moreover, should Defendants demonstrate "good cause," the Court may modify the discovery cutoff date. *See* Fed. R.Civ.P. 16(b)(4).

disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). So, as before, the proper inquiries are whether the Court can plausibly infer from the allegations of Proposed Count II (1) that unpaid contributions are plan assets, and (2) that Scott, Stephen, or Jacobson exercised authority or control respecting the management or disposition of those assets.

The Court begins with the "authority or control" inquiry and clarifies the scope of its July 2014 Opinion and its reading of *AirTab*, one of Defendants' principal bases for opposing Plaintiffs' motion to amend. (*See* Defs.' Resp. to Mot. to Amend at 6–7.) The Court then addresses Defendants' claim that Proposed Count II is futile because Scott, Stephen, and Jacobson did not have adequate knowledge of their status as fiduciaries. (*See* Dkt. 68, Defs.' Sur–Reply at 2–5.)

### A.

Defendants, relying on this Court's July 2014 Opinion and *Sheet Metal Local 98 Pension Fund v. AirTab, Inc.*, 482 Fed. Appx. 67, 69 (6th Cir.2012), argue that Proposed Count II is futile because, "just as in *AirTab*, no allegations exist other than refusal to pay the required funds...." (Defs.' Resp. at 8.) Defendants say, "Although the [Proposed] Amended Complaint now states separate counts for breach of fiduciary duty against each of [Scott, Stephen, and Jacobson], there are no factual allegations of any breach beyond the allegation of using 'plan assets' for purposes other than payment of the funds." (*Id.*)

The Court concludes that the allegations of Proposed Count II are not precluded by *AirTab*'s holding. The employee benefit funds in *AirTab*, like Plaintiffs here, sought to hold a company officer personally liable for the officers' failure to comply with fiduciary duties imposed by ERISA.

482 Fed.Appx. at 68. And like this case, *AirTab* involved the officers' decision not to make employer contributions. *Id.* Further, the Sixth Circuit assumed that the unpaid contributions were plan assets under the terms of the collective bargaining agreement, *id.* at 69—a fact that Plaintiffs have alleged here with supporting contract language, (2d Proposed Am. Compl. ¶ 27). But the Sixth Circuit's holding that Air-Tab's officers were not fiduciaries under ERISA was limited to a situation where the officer does nothing more than decline to pay the required contributions: "The Union points to no other actions of the [officers] besides their refusal to pay funds as constituting a breach of fiduciary duty. Their breach of fiduciary duty claim is therefore best characterized as a restatement of its other claims." *AirTab*, 482 Fed.Appx. at 69–70; *see also id.* at 69 ("the [officers'] alleged refusal to pay the funds as required under the CBA does not rise to the level of exercising discretionary control or authority such that fiduciary status attaches."); *Sheet Metal Workers Local 98 Pension Fund v. AirTab, Inc.*, No. 2:06–CV–345, 2008 WL 4561545, at *2 (S.D.Ohio Oct. 10, 2008) ("AirTab ceased paying contributions into the fund in December 2005 because, it claims, AirTab was paid ahead through May 2006 based upon the extra amount it had already paid and its belief that it was not required to pay on projects bid prior to September 9, 2004."). The Sixth Circuit explicitly stated, "This is not a situation where employers decided to funnel monies from a general account toward paying off company creditors instead of to beneficiaries, as in *LoPresti v. Terwilliger*, 126 F.3d 34, 40 (2d Cir.1997)." *Id.* at 69; *see also LoPresti*, 126 F.3d at 40 ("[T]his Court is convinced that Donald's commingling of plan assets with the Company's general assets, and his use of those plan assets to pay Company creditors, rather than forwarding the as-

sets to the Funds means that he 'exercise[d] ... authority or control respecting ... disposition of [plan] assets,' and hence is a fiduciary for purposes of imposing personal liability under ERISA."). Thus, *AirTab*'s holding does not cover the situation here: Scott, Stephen, and Jacobson are not only accused of failing to make contributions to the funds, they are further alleged to have paid other creditors instead of making those contributions. *See Trustees of Plumbers & Pipefitters Local No. 333 Health & Welfare Fund v. Grindall & White, Inc.*, No. 12–10977, 2013 WL 5450273, at *5 (E.D.Mich. Sept. 30, 2013) ("[T]he court in *AirTab* was careful to emphasize that the case before it did not present a situation where employers decided to funnel monies from a general account toward paying off company creditors instead of to beneficiaries. Rather, the facts in *AirTab* showed only that the defendants had failed or refused to make the employee fringe benefit contributions called for under a collective bargaining agreement, and the court was reluctant to view this breach of a contractual obligation, standing alone, as giving rise to a breach of fiduciary duty claim under ERISA." (internal quotation marks omitted) (internal citation omitted)).

The Court recognizes that in its July 2014 Opinion, it stated,

> The reasoning of *AirTab* and *Bjorkedal* fit the allegations of the Trustees' Complaint. Under those cases, the Trustees' assertion that Scott, Stephen, and Jacobson breached fiduciary duties owed to the funds by paying the H.B. Stubbs entities' other creditors instead of the funds does not, without more, show that Scott, Stephen, and Jacobson exercised the requisite authority or control over plan assets such that they acted as fiduciaries within the meaning of 29 U.S.C. § 1002(21)(A)(i).

*H.B. Stubbs,* 33 F.Supp.3d at 897. But this Court also made clear that "even if the Court were to agree with the Trustees to the extent that the unpaid employer contributions were plan assets once due, it does not *necessarily* follow that Scott, Stephen, or Jacobson breached fiduciary duties owed to the funds by paying H.B. Stubbs' other debts instead of the funds." *Id.* (emphasis added). Having now had an opportunity to review Plaintiffs' Proposed Count II, and the parties and the Court now focusing on the authority-or-control requirement of 29 U.S.C. § 1002(21)(A)(i), the Court concludes that *AirTab* does not preclude a finding of fiduciary status under ERISA where (1) the officers pay other creditors with money that could be used to pay due-and-owing employer contributions and (2) the parties agreed that outstanding contributions are vested plan assets. *See Grindall & White,* 2013 WL 5450273, at *5. Yet, these are the allegations in Proposed Count II. Accordingly, *AirTab* does not demonstrate that Proposed Count II is futile.

**B.**

*AirTab*'s holding aside, Defendants take the position that some of *AirTab*'s reasoning, along with *Iron Workers' Local No. 25 Pension Fund v. Future Fence Co.,* No. 04–73114, 2006 WL 2077639 (E.D.Mich. July 24, 2006), *reconsideration denied,* 2006 WL 2927670 (E.D.Mich. Oct. 12, 2006), and *ITPE Pension Fund v. Hall,* 334 F.3d 1011 (11th Cir.2003), support the proposition that § 1002(21)(A)(i) includes a knowledge requirement. (*See* Defs.' Resp. to Pls.' Mot. to Amend at 6; *see also* Dkt. 68, Defs' Sur–Reply at 2–4.) Scott, Stephen, and Jacobson stress that they did not have knowledge of the Addenda and, without knowledge of their fiduciary duties, they cannot be deemed fiduciaries under § 1002(21)(A). (*See id.*) More specifically, they argue,

[t]he execution of the amendments to the Trust Agreement on January 14, 2014 is suspect—having been executed close to the eve of this litigation and without notice to any party, including the Individual Defendants. How the Trustees can make a sweeping change and bind fiduciaries retroactively and without notice is entirely unclear and unsupported by *Future Fence* and *ITPE.*

(Defs.' Resp. at 6.) In their sur-reply, Defendants focus on Plaintiffs' post-oral-argument allegations that Scott, Stephen, and Jacobson had notice of the Addenda, and argue that Plaintiffs assertions are conclusory and cannot survive a proper application of *Iqbal.* (Dkt. 68, Defs.' Sur–Reply at 2–5.)

The Court addresses Defendants' argument in two steps. First, the Court explains that *ITPE, Future Fence,* and *Air-Tab,* as well as certain decisions from this District, are largely consistent with an awareness standard, i.e., that a person falls within the scope of § 1002(21)(A) if he knew or should have known of contractual language making clear that due-and-owing employer contributions are plan assets. Next, the Court applies this rule of decision to the allegations in the revised proposed amended complaint and concludes that it fails to state a plausible breach-of-fiduciary-duty claim.

### 1.

The roots of an awareness requirement for ERISA fiduciary status appear to be in *Herman v. NationsBank Trust Co. (Georgia),* 126 F.3d 1354 (11th Cir.1997). *Herman* involved an employee stock ownership plan governed by ERISA that included two types of shares: those specifically allocated among plan participants and a pool of unallocated shares. *Id.* at 1357. The Secretary of the United States Department of Labor sued the plan's trustee, alleging that the trustee violated certain provisions of ERISA when it failed to tender all of the plan's unallocated shares to one of two competing buyers. *Id.* at 1357, 1359. Although a trustee usually has exclusive authority over the management and control of plan assets, *id.* at 1360, the plan in *Herman* provided that the trustee could not sell a participant's allocated shares unless the participant specifically directed the trustee to do so (with silence treated as direction to not tender), and, further, the plan's trustee had to sell unallocated shares "in the same proportion as it tender[ed] allocated shares," *id.* at 1357–58. The trustee thus defended by invoking a provision of ERISA that excepted control over plan assets from a trustee where the trustee is subject to the direction of a named fiduciary. *Id.* at 1361–62. In other words, the issue before the court was whether the participants could be deemed "named fiduciaries who [could] direct [the trustee's] asset management decisions with regard to unallocated shares...." *Id.* at 1362.

The court began its analysis by examining the plain language of § 1002(21)(A), noting that, to be deemed an ERISA fiduciary (and *a fortiori* to be deemed a "named fiduciary"), the person "must have discretion to decide the disposition of plan assets or must exercise authority or control over plan assets." *Herman,* 126 F.3d at 1365, 1368 n. 12. It then explained,

[t]he term "discretion" means the "power of free decision or choice" or "individual judgment." Webster's Third New International Dictionary 647 (1986). In order to have the power of decision or choice, a person must know that he can decide an issue and be aware of the choices he has. A person cannot exercise the power of choice or individual judgment unless he is aware of his ability to do so. To "exercise" is to "make

effective in action," *id.* at 795, and a person must have knowledge of his authority or power to control in order to exercise control. In order for a fiduciary to exercise discretion, the fiduciary must engage in conscious decisionmaking or knowledgeable control over assets.

*Herman,* 126 F.3d at 1365–66. Turning to the facts of the case before it, the court noted that the tender notice sent by the trustee to the plan participants did not inform the participants that their votes to sell allocated shares would be mirrored by the trustee's sale of unallocated shares, and that evidence that many participants were told of the mirror-voting provision was inadequate to show that "all of the participants were given notice at any time regarding how the mirror voting provision works." *Id.* at 1367. The court thus concluded that the plan participants were not "fiduciaries with regard to unallocated shares when they are not given notice that their action or inaction with regard to their allocated shares [would] control the disposition of the unallocated shares." *Id.* at 1366; *see also id.* at 1368.

In *ITPE Pension Fund v. Hall,* 334 F.3d 1011 (11th Cir.2003), the Eleventh Circuit applied *Herman*'s notice requirement to a factual context more akin to the one alleged in Plaintiffs' revised proposed amended complaint. In *ITPE,* a pension fund sought to hold Roger and Hope Hall, the general manager and president of H & R Services (respectively), personally liable for H & R's failure to make employer contributions to the fund. *Id.* at 1012–13. To succeed, the fund needed to establish that the Halls were fiduciaries within the meaning of § 1002(21)(A). *Id.* at 1013. The court's focus was on the first prong of that statutory provision, whether the parties' contracts made clear that due-and-owing employer contributions were plan assets. *Id.* Noting that the parties' com-

peting interpretations of the contractual language were both "credible," the court found that it "would be unfair" to "now apply principles of contract construction to decide that such contributions are indeed assets and that personal liability is appropriate for those with control over those newly clarified assets." *Id.* at 1015. In reaching this conclusion, the Eleventh Circuit found support in its earlier decision in *Herman:*

> A person should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of his status as a fiduciary:
>
> > "If ERISA did not limit the definition of fiduciaries to those with knowledge of their authority and discretion, then persons or entities could become subject to fiduciary liability without notice. Such a result would not only be unfair, but it would also disserve a core purpose of ERISA, which is to create a system whereby accountable fiduciaries are motivated by their accountability to protect the interests of participants in ERISA plans."

*ITPE,* 334 F.3d at 1015 (quoting *Herman,* 126 F.3d at 1366).

In *Iron Workers' Local No. 25 Pension Fund v. Future Fence Co.,* No. 04–73114, 2006 WL 2077639 (E.D.Mich. July 24, 2006), *reconsideration denied,* 2006 WL 2927670 (E.D.Mich. Oct. 12, 2006), a court in this District relied on *ITPE* to conclude that the principal and president of Future Fence, Kenneth Hollowell, could not be deemed an ERISA fiduciary because he did not have notice of his fiduciary status. 2006 WL 2077639, at *9. Hollowell had not made certain employer contributions, believing that the collective bargaining agreement did not apply to certain pro-

jects. *See id.* at *2. The funds disagreed, and claimed that Hollowell's failure to pay amounted to a breach of fiduciary obligations imposed by ERISA. *See id.* at *2–3. The court, relying on *ITPE*, rejected the funds' claim that Hollowell was a fiduciary within the meaning of § 1002(21)(A):

> One problem with the Funds' argument is that they currently are seeking to hold Mr. Hollowell liable for unpaid contributions for a period beginning in 2001. As Defendants demonstrate, previous trust agreements lack a definition of plan assets and only define plan contributions as payments "made" to the trust by the employer.
>
> Moreover, courts have held that "[a] person should not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of his status as a fiduciary." [*ITPE*, 334 F.3d at 1015.] In this case, while Mr. Hollowell signed the 1987–1989 CBA on behalf of Future Fence, he never agreed to be personally liable for the company's fringe benefit contributions. More importantly, Mr. Hollowell attests that he neither received nor had any knowledge of the Funds' trust agreements prior to this litigation. Thus the evidence indicates that Mr. Hollowell never was made aware of his personal duties as a fiduciary.

*Future Fence,* 2006 WL 2077639, at *9 (some internal citations omitted) (footnote omitted).

The funds subsequently asked the court to reconsider its determination that Hollowell was not an ERISA fiduciary, arguing that "other documents, at least one of which Defendants received," informed that unpaid contributions were plan assets. *Iron Workers' Local No. 25 v. Future Fence Co.,* No. 04 73114, 2006 WL 2927670, at *2 (E.D.Mich. Oct. 12, 2006). The court was still not persuaded:

> [E]ven if the Court considered Plaintiffs' new argument and evidence and found that Mr. Hollowell received documents defining unpaid contributions as vested plan assets when they become due, the Court continues to hold that Mr. Hollowell cannot be held personally liable for the unpaid contributions as Plaintiffs still have not shown that he ever was made aware of his status as a fiduciary. . . . The provisions in the CBAs defining contributions as plan assets on the date they become due and incorporating the Funds' trust documents do not inform the individual signing the CBAs on behalf of the employer that they personally will be held liable for those contributions or that the trust documents—which neither are attached to the CBAs nor provided to the employer or individual signing the CBAs—establish the individual's personal liability for unpaid contributions. Plaintiffs do not point to any provision in the CBAs—or in fact in any other document—specifically committing the individual signing the CBA on behalf of an employer to personal liability for ERISA contributions.

*Future Fence Co.,* 2006 WL 2927670, at *3 (citing *ITPE*, 334 F.3d at 1015).

Like the court in *Future Fence,* in *Air-Tab,* a panel of the Sixth Circuit Court of Appeals relied on *ITPE* to reason that the corporate officers' lack of knowledge of their fiduciary status supported a finding that the officers were not ERISA fiduciaries:

> First, the Ileogbens are not defined as fiduciaries in any documents; on the contrary, it is the trustees that have control over the plan's assets according to the CBA and other contractual documents. In addition, at least one other circuit has held that "a person should

not be attributed fiduciary status under ERISA and held accountable for performance of the strict responsibilities required of him in that role, if he is not clearly aware of his status as a fiduciary." [*ITPE*, 334 F.3d at 1015]. Here, nothing indicates that the Ileogbens were ever made aware of their potential status as fiduciaries.

*Sheet Metal Local 98 Pension Fund v. AirTab, Inc.*, 482 Fed.Appx. 67, 69 (6th Cir.2012); *see also Trustees of Abatement Workers Reg'l Local Union No. 207 Health & Welfare Fund v. Nw. Firestop, Inc.*, No. 11–CV–13982, 2013 WL 2033622, at *7 (E.D.Mich. May 14, 2013) (referring to *Future Fence* and *AirTab* and noting, "some courts take a closer look at the particular case in order to determine if the individual at the company knew he was a fiduciary under the trust documents as incorporated by the CBA before personal liability arises" (internal quotation marks omitted)).

On the other hand, it appears that at least one court in this District has held that, where an officer has plenary, or at least very substantial, control over the payment of employer contributions that become plan assets once due, and elects to pay other expenses in lieu of making those contributions, the officer need not be aware of his status as an ERISA fiduciary to be deemed one. *See generally Trustees of Plumbers & Pipefitters Local No. 333 Health & Welfare Fund v. Grindall & White, Inc.*, No. 12–10977, 2013 WL 5450273 (E.D.Mich. Sept. 30, 2013); *see also Trustees of Detroit Carpenters Fringe Benefit Funds v. Nordstrom*, 901 F.Supp.2d 934 (E.D.Mich.2012).

In *Grindall & White*, employee benefit funds sought to hold Jeff White "liable for the full amount of [Grindall & White's] allegedly delinquent fringe benefit contributions." 2013 WL 5450273, at *1. The funds' undisputed evidence demonstrated that White was the sole operator of Grindall & White, managed its day-to-day affairs, and that "various creditors were paid from funds in the company's bank account during the time period that employee benefit contributions were owed to the Plaintiff funds." *Id.* at *3. Relying on its earlier decision in a case with similar facts, the court explained " 'from the moment [the individual defendant] knowingly failed to make required contributions to the Funds for his workers, he exercised control respecting disposition of plan assets, held those funds as a fiduciary, and ... was required to discharge his duty solely in the interest of the participants and beneficiaries of the Funds.' " *Id.* at *4 (quoting *Trustees of Detroit Carpenters Fringe Benefit Funds v. Nordstrom*, 901 F.Supp.2d 934, 942 (E.D.Mich.2012)). The court further stated, " '[c]ourts routinely hold that this type of control' over company assets and use of these assets to pay creditors over employee benefit plan beneficiaries establishes 'that the [corporate] officer-defendant is an ERISA fiduciary and can be held personally liable for ERISA contributions.' " *Id.* at *4 (quoting *Nordstrom*, 901 F.Supp.2d at 942).

White attempted to avoid this "routine[ ] hold[ing]" by relying on *AirTab* and explaining that he was "never aware of any personal obligations under the ERISA law" and that Grindall & White's "mere failure" to make contributions after the company "ran out of money" was not a basis for charging him with personal liability. *Grindall & White*, 2013 WL 5450273, at *4. The *Grindall* court acknowledged that "the Sixth Circuit [in *AirTab* ] explained that the individual defendants were 'not defined as fiduciaries in any documents' governing the ERISA plans, and thus were not 'made aware of their potential status as fiduciaries' " and fur-

ther noted that *Future Fence* held "that the individual defendant could not 'be held personally liable for the unpaid contributions' owed by the corporate defendant because the plaintiff funds had not 'shown that he ever was made aware of his status as a fiduciary.'" *Id.* at *4 (quoting *Air-Tab,* 482 Fed.Appx. at 69 and *Future Fence,* 2006 WL 2927670, at *3). But the court found AirTab distinguishable. *Id.* at *4–5. The court explained that, as in Nordstrom, there was "additional evidence that avoided AirTab's concern that an ERISA breach of fiduciary duty claim against corporate officers should not serve merely as a repackaged ERISA breach-of-contract claim that is properly brought only against the corporation itself." *Id.* at *5 (citing *Nordstrom,* 901 F.Supp.2d at 942). The court stressed that "the unchallenged record shows that Defendant White was the sole operator of Defendant Grindall & White and managed the day-to-day affairs of the corporate defendant, and that the company elected to pay a number of creditors rather than devoting these company assets to the shortfall in employee benefit contributions." *Id.*

*International Union of Painters & Allied Trades District Council No. 78 Health & Welfare Fund v. Argyros,* No. 805–CV–1661T–24TGW, 2007 WL 1288386 (M.D.Fla. May 2, 2007), helps harmonize the above authorities. There, trustees of an employee welfare fund, among others, sued Harry Argyros under a breach-of-ERISA-fiduciary-duties theory for his company's failure to contribute to the funds. *Id.* at *1–2. But the trustees had not directed the court to "any evidence in the record" showing that, prior to litigation, Argyros ever saw the trust documents stating that unpaid contributions were plan assets. *Id.* at *3. Using this fact and *ITPE* (among other cases), the court concluded that Argyros was not personally liable: "he did not learn that unpaid, owed

contributions were assets of the Trust Funds prior to [the] lawsuit." *Id.* at *6. In denying the trustees' motion for reconsideration, the court suggested that the awareness requirement of ERISA fiduciary status was equivalent to a should-have-known standard: "[In granting summary judgment, this] Court found that before a fiduciary duty is imposed on a person, that person should know *or have reason to know* of the contractual language that gives rise to the fiduciary duty. Since it is undisputed that Argyros did not know, *nor did he have a reason to know,* of the language in the trust documents (since he had never been given the trust documents), he could not be on notice regarding his fiduciary status." *Int'l Union of Painters & Allied Trades Dist. Council No. 78 Health & Welfare Fund v. Argyros,* No. 8:05–CV–1661–T–24TGW, 2007 WL 1577840, at *2 (M.D.Fla. May 31, 2007) (emphases added).

■ In view of the foregoing case law, the Court concludes that it is sufficient for an employee benefit fund seeking to hold a company officer liable for breach of fiduciary duties imposed by ERISA for the company's failure to make employer contributions to the fund to show that the officer had authority or control to pay the contributions and knew or *should have known of the contractual language making clear that unpaid employer contributions are plan assets.*

The Court recognizes that statements in *AirTab* and *Future Fence* could be read as going further, engrafting a knowledge-of-fiduciary-status or, similarly, a knowledge-of-fiduciary-duties requirement onto § 1002(21)(A). But *ITPE,* which *Future Fence* and *AirTab* relied on, did not go so far. The Eleventh Circuit's concern was that the contract language did not make

clear to the officers that employer contributions became plan assets once due:

> We appreciate that ERISA is a remedial statute deserving of broad construction, ... and that this broad construction may well extend to ERISA's definition of the people who are fiduciaries of a plan.... But we cannot employ this broad construction to render ambiguous contractual language clear, and without clear contractual language it is improper to impute fiduciary responsibility. Preservation of the purposes of ERISA does not require that we ambush corporate officers with stringent fiduciary duties and personal liability based on convoluted contractual language that requires a court to parse and interpret.

*ITPE*, 334 F.3d at 1015–16. If the contract language makes plain that unpaid employer contributions are plan assets, and the officers who have the authority and control to make the contributions should know of the contract, then *ITPE*'s concern about "ambush[ing] corporate officers" would be assuaged. *Cf. ITPE*, 334 F.3d at 1012 ("We find that either clear contractual language or clear, shared intent of the parties is a necessary prerequisite to imposing fiduciary responsibility on officers who otherwise would be unsure of their increased responsibilities under ERISA."); *Future Fence*, 2006 WL 2927670, at *2 ("Regardless of whether the CBAs expressly incorporated the various trust documents and bound signatory employers to those documents, it is undisputed that Defendants never received copies of those documents and therefore could not have known what was contained therein. Similarly, there is no evidence that Defendants ever received a copy of the amendment to the 1998–2001 CBA.").[2]

Accordingly, for Plaintiffs' theory that Scott, Stephen, and Jacobson breached fiduciary duties imposed by ERISA by paying certain company obligations instead of making employer contributions to the funds to state a claim for relief, Plaintiffs must plead that the contractual agreement between the funds and the H.B. Stubbs entities made clear that due-and-owing employer contributions were plan assets, and, further, that Scott, Stephen, and Jacobson knew or should have known of this agreement when they paid certain company obligations instead of the employee benefit funds. *See* 29 U.S.C. § 1002(21)(A)(i).

### 2.

█ It is true that as opposed to the original Complaint, Plaintiffs have pled language from the Addenda providing that the employer contributions that H.B. Stubbs agreed to pay to the funds became "[plan] assets" once due and owing. (2d Proposed Am. Compl. ¶ 27.) Plaintiffs have also incorporated into their revised proposed amended complaint the Addenda that include the relevant contractual language. (*Id.*) But there is a significant problem with the scope of Proposed Count II: the Addenda were executed on January 14, 2014. It is simply not plausible that Scott, Stephen, or Jacobson should have known that employer contributions were plan assets before an agreement making that so was even executed. The provision that "Employer contributions be-

---

**2.** The Court believes that the rule suggested by *Grindall & White*—that an officer exercises the requisite "authority or control" under § 1002(21)(A) if he has plenary or very substantial control over the payment of employer contributions and knows the contributions are not being paid (or himself decides not to pay them), *see id.* 2013 WL 5450273, at *5—does not go far enough (in imposing an awareness requirement) where the corporate officer has no reasonable means of knowing that unpaid employer contributions are plan assets under the collective bargaining agreement and associated trust agreements.

come Plan assets at the time they are due and owing to the Fund," because they recognized that the collective bargaining and trust agreements, as they stood prior to January 14, 2014, did not make that point clear. Accordingly, the Court finds that the Proposed Count II does not make plausible that, prior to January 14, 2014, Scott, Stephen, and Jacobson knew or should have known that unpaid employer contributions were plan assets.

This conclusion does not completely address Defendants' claim that Proposed Count II is futile: it instead raises the further question of whether Plaintiffs have adequately pled that Scott, Stephen, or Jacobson should have known of the Addenda after they were executed on January 14, 2014.

At oral argument, the Court addressed with the parties the issue of whether Scott, Stephen, and Jacobson had adequate notice that unpaid employer contributions were plan assets and provided Plaintiffs with an opportunity to revise their proposed amended complaint to plead Scott, Stephen, and Jacobson's notice or knowledge of the Addenda. As compared to the pre-hearing proposed amended complaint, the revised version includes these additional allegations relevant to the issue of notice or knowledge:

28. Defendants, including the individual Defendants, being Scott Stubbs, Stephen Stubbs and Kenneth W. Jacobson, had actual and/or constructive notice of the above-referenced Trust Agreements and their respective amendments.

43. Defendant Scott Stubbs knew or should have known that he would be held personally liable for his above-referenced actions.

58. Defendant Stephen Stubbs knew or should have known that he would be held personally liable for his above-referenced actions.

73. Defendant Kenneth W. Jacobson knew or should have known that he would be held personally liable for his above referenced actions.

(2d Proposed Am. Compl. ¶¶ 28, 43, 58, 73.) The "above referenced actions" refers to "fail[ing] to turn over" plan assets "by failing to pay all of the accrued outstanding fringe benefit contributions to Plaintiffs when due," and using the "accrued outstanding fringe benefit contributions and monies within his possession, custody and/or control for purposes other than payment to Plaintiffs." (2d Proposed Am. Compl. ¶¶ 36–37; *accord id.* ¶¶ 51–52, 66–67.)

As this Court explained in its July 2014 Opinion, *Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), teach that a federal trial court tasked with determining whether a claim survives a motion to dismiss pursuant to Rule 12(b)(6), may proceed by first stripping the claim of its conclusory allegations. *H.B. Stubbs,* 33 F.Supp.3d at 887–88 (citing *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937); *see also Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 ("[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."). The district court may then examine the remaining factual matter, presumed to be true, to determine whether it is plausible that the defendant is liable for the conduct alleged. *Id.* (citing *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937).

Under these standards and the should-have-known standard derived above, Plaintiffs' allegations do not make plausible that Scott, Stephen, and Jacobson were fiduciaries within the meaning of § 1002(21)(A). Plaintiffs' assertions that Scott, Stephen, and Jacobson "had actual and/or construc-

tive notice of the above-referenced Trust Agreements and their respective amendments" and "knew or should have known that [t]he[y] would be held personally liable for his above-referenced actions" are exactly the type of conclusory allegations that are not entitled to a presumption of truth under Supreme Court precedent. *Cf. Iqbal,* 556 U.S. at 680, 129 S.Ct. 1937 ("Respondent pleads that petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest.' ... These bare assertions, much like the pleading of conspiracy in *Twombly,* amount to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim.... As such, the allegations are conclusory and not entitled to be assumed true."). Plaintiffs' assertions do nothing to explain how, when, or where Scott, Stephen, and Jacobson received notice or why Scott, Stephen, and Jacobson should have known of the Addenda. Indeed, the revised proposed amended complaint does not even plead much detail as to Scott, Stephen, and Jacobson's roles within the H.B. Stubbs' entities: Jacobson is alleged to be the chief financial officer, but Scott and Stephen are merely alleged to be "owner[s] and/or officer[s]." (2d Proposed Am. Compl. ¶¶ 9–10, 32, 47, 62.)

At oral argument, Plaintiffs indicated that they should be permitted to proceed to discovery on the issue of Scott, Stephen, and Jacobson's knowledge that unpaid employer contributions were plan assets. But Plaintiffs' implication that discovery would allow them to add factual matter to a claim that is otherwise implausible does not satisfy the standards set forth in *Twombly* and *Iqbal. See Twombly,* 550 U.S. at 559, 127 S.Ct. 1955 ("It is no answer to say that a claim just shy of a plausible entitlement to relief can, if groundless, be weeded out early in the discovery process through 'careful case management,' given the common lament that the success of judicial supervision in checking discovery abuse has been on the modest side." (internal citation omitted)); *New Albany Tractor, Inc. v. Louisville Tractor, Inc.,* 650 F.3d 1046, 1051 (6th Cir.2011) ("By foreclosing discovery to obtain pricing information, the combined effect of *Twombly* and *Iqbal* require plaintiff to have greater knowledge now of factual details in order to draft a 'plausible complaint.' ").

Moreover, the Court finds persuasive Defendants' sur-reply argument that the Trustees or the Union should have at least some documentation in their possession showing that the Addenda were distributed to employers, including H.B. Stubbs:

[E]ven if "constructive notice" and "should have known" are sufficient to meet the knowledge element, the additional paragraphs are a "formulaic recitation" of the element of notice and do not cite any substantive facts. This is especially relevant given that all facts which might support Plaintiffs' allegations of notice are entirely within Plaintiffs' possession—Plaintiffs do not require discovery in order to plead whether a letter, email, fax or phone call was made to one or more of the individual Defendants to provide notice of the relevant amendments to the Trust Agreements. Plaintiffs' counsel argued before the Court that annual notices were sometimes prepared and circulated to participating employers. Whether such a notice was circulated during the relevant time period is a fact entirely within Plaintiffs' control.

(Dkt. 68, Defs.' Sur–Reply at 4.) Plaintiffs have had ample opportunity to supplement their proposed amended complaint, and

still have not pled how employers such as H.B. Stubbs learn of trust agreement addenda in the usual course.

Accordingly, the Court concludes that Proposed Count II of the revised proposed amended complaint fails to state a claim upon which this Court can grant relief, and, therefore, Plaintiffs' motion to add a claim that Scott, Stephen, and Jacobson breached fiduciary duties under ERISA will be denied.

## C.

At oral argument Defendants raised a new argument: that language in the Addenda granted every right in the proverbial "bucket of property rights" to the trustees of the funds. As such, Defendants argued, it was legally impossible for Scott, Stephen, or Jacobson to have exercised any control or authority over plan assets. They had no rights over those assets. The Court questioned whether this new argument would open the door for Plaintiffs to assert that Scott, Stephen, and Jacobson used plan assets when they had lacked any right to do so. Perhaps in response, Plaintiffs' revised proposed amended complaint includes a claim for conversion under state law. (2d Proposed Am. Compl. ¶¶ 78–87.) Defendants argue, among other things, that Plaintiffs' conversion claim is preempted by ERISA. (Defs.' Sur–Reply at 5–8.)

The Court will deny without prejudice Plaintiffs' motion to add a conversion claim. First, Plaintiffs have technically not moved to add the claim, as their pre-hearing proposed amended complaint did not include the claim and Plaintiffs have filed no post-hearing briefing or motion. Second, the purpose of the conversion claim was to respond to Defendants' reading of the Addenda as granting all rights to plan assets to the trustees. But Defendants made this argument in the al-ternative, and the Court has granted Defendants' relief pursuant to their primary argument regarding Scott, Stephen, and Jacobson's knowledge. The Court thus has no reason to opine on Defendants' reading of the Addenda. Moreover, Plaintiffs have not had any opportunity to respond to Defendants' arguments regarding ERISA preemption because the argument was first raised in a sur-reply.

## IV.

Given the foregoing, the Court hereby GRANTS IN PART AND DENIES IN PART Plaintiffs' "Motion for Leave to Amend Complaint" (Dkt. 60). The Court DENIES the motion WITH PREJUDICE to repleading a claim that Scott, Stephen, or Jacobson breached fiduciary duties owed to the funds under ERISA. The Court DENIES the motion WITHOUT PREJUDICE to repleading a claim for conversion. The Court GRANTS the motion insofar as Plaintiffs seek to change the amount that the H.B. Stubbs entities allegedly owe the funds based on an updated audit. (Dkt. 60 at Pg ID 407 ¶¶ 2–6.) Plaintiffs have until **November 3, 2014,** to docket a version of the revised proposed amended complaint (Dkt. 67) that includes only those allegations pertaining to Count I. Once docketed, that complaint will supersede the original complaint.

SO ORDERED.